[Civ. No. 2981.  Third Appellate District.—January 23, 1926.]

## I. J. TRUMAN, Jr., Respondent, v. SUTTER-BUTTE CANAL COMPANY (a Corporation), Appellant.

[1] NEGLIGENCE — DAMAGE TO ORCHARD — CONSTRUCTION AND MAINTENANCE OF IRRIGATION DITCH—PROXIMATE CAUSE—VERDICT—APPEAL. In an action to recover damages for the destruction of plaintiff's prune orchard alleged to have been caused by water which flowed and seeped through a break and cracks in a ditch maintained by defendant and which bordered on plaintiff's land, where there was a conflict in the evidence as to whether the damage to plaintiff's trees was wholly due to the flooding of his land by the water from the defendant's ditch or was caused by the joint action of the water thus thrown upon the orchard and the percolating waters from plaintiff's rice-fields in the vicinity of the orchard, the verdict of the jury in favor of the plaintiff, which necessarily implied a finding that the proximate cause of the damage was the negligent acts of defendant in the construction and management of its ditch, is conclusive on appeal.

[2] ID.—LETTER—COMPROMISE—ADMISSIONS—EVIDENCE.—In such action, the trial court cannot be justly charged with an abuse of discretion in admitting in evidence a letter addressed to plaintiff by an engineer employed by defendant and which had reference to the break in defendant's ditch and in which the writer admitted that the damage to plaintiff's property was caused in part by water which flowed over and upon plaintiff's orchard from defendant's ditch by reason of the break occurring therein, where conceding that such letter contained a proposition to compromise, it did so

1.  See 19 Cal. Jur. 732.
2.  See 10 Cal. Jur. 1061; 1 R. C. L. 471.

upon the admission by defendant of liability for the damage, and the letter was permitted to be introduced in proof of such admission.

[3] ID.—ESCAPE OF WATER—PROOF OF NEGLIGENCE—INSTRUCTIONS.—In such action, the giving of an instruction to the effect that if the jury find that water escaped through or over the banks of a designated ditch, or seeped or percolated from or out of such designated ditch or other ditch of the defendant, "the mere fact of such escape of water as aforesaid is in itself sufficient evidence to prove negligence on the part of defendant canal company, and if you find that such negligence resulted in damage to the premises of plaintiff and to the fruit trees thereon, your verdict should be for the plaintiff for such sum as he has suffered therefrom, not exceeding the sum claimed in the complaint," cannot be held to have worked prejudice as against the defendant, where defendant expressly admitted liability, at least in part, for the damage of which plaintiff complained.

[4] ID.—DAMAGES—INSTRUCTIONS.—In such action, the part of a given instruction to the effect that the jury could consider "the detriment, if any, resulting by reason of the negligent acts and omissions, if any, of defendant, or certain to result in the future," did not have the result of so extending the scope of the inquiry as to the damage suffered by the plaintiff as to have justified the jury into taking into consideration, in assessing the damages, some other damage which the defendant might cause to plaintiff's property by some future negligent acts or omissions in the maintenance of its ditches, where the jury, considering instructions as a whole, and having in view the rulings of the trial court confining the evidence to the proof of such damage only as might have been done to plaintiff's property at the time alleged in the complaint, could not have understood said instructions to mean anything other than that the jury could consider the detriment, if any, resulting by reason of the negligent acts and omissions, if any, as alleged in the complaint, or which may result in the future from the negligent acts and omissions so alleged.

[5] ID.—ASSIGNMENTS OF ERROR—APPEAL—INSTRUCTIONS.—In such action, assignments of prejudicial error predicated on the refusal of the trial court to give certain instructions requested by the defendant will not be reviewed, where all that counsel say in regard to the action of the court in refusing to allow said instructions is that they "should have been given."

---

(1) 4 C. J., p. 772, n. 89, p. 848, n. 35, p. 857, n. 2, p. 858, n. 3. (2) 22 C. J., p. 313, n. 10, 11.    (3) 4 C. J., p. 1029, n. 30.    (4) 38 Cyc., p. 1778, n. 73; 40 Cyc., p. 839, n. 78 New.    (5) 3 C. J., p. 1357, n. 47, p. 1359, n. 52, p. 1376, n. 60, p. 1379, n. 71.

5. See 2 Cal. Jur. 732; 2 R. C. L. 178.

APPEAL from a judgment of the Superior Court of Sutter County. K. S. Mahon, Judge. Affirmed.

The facts are stated in the opinion of the court.

Henry Ingram and W. H. Carlin for Appellant.

George E. Jones, Orville C. Pratt, Jr., and Arthur H. Barendt for Respondent.

HART, J.—The plaintiff sued the defendant to recover the aggregate sum of $18,000, alleged to be the extent of the damage, measured in money, inflicted upon plaintiff's orchard by certain acts of the defendant. The issues of fact were tried before a jury, who awarded plaintiff a verdict for the sum of $5,000. Judgment was entered accordingly, and from said judgment defendant appeals.

The defendant is a public service corporation, and owns and operates an irrigation system, "consisting of ditches, dams, pumping plants and other structures," and serves persons owning lands contiguous to its system with water for irrigating purposes. It takes water from the Feather River and conveys it through its ditches to its various customers in the counties of Sutter and Butte.

The plaintiff owns a tract of 40 acres of land (specifically described in the complaint) in the county of Sutter. Of this tract 26 acres, situated in the northeast corner of the tract, borders upon certain ditches maintained by the defendant for the purposes of its business in the distribution of water to its customers. The said 26 acres had been and constituted, at the time of the damage thereto in the manner claimed and alleged by plaintiff, to be hereinafter explained, a prune orchard of 2,340 trees, 16 acres thereof being set out in three year old trees, and the remainder planted in the month of March, 1921, with trees of the age of one year. The defendant, it appears, prior to and at the time of the damage alleged and complained of by plaintiff, owned and operated, as parts of its irrigation system, two ditches, "touching said above described tract, one on the north side thereof, designated by defendant as Lateral 'A,' which, from the northeast corner, touches at all points the north side of said tract, and carries water in a westerly

direction to various consumers of this defendant; the other ditch, designated by defendant as Lateral 'A–3,' from its confluence with ditch Lateral 'A' at the northeast corner of said tract, extends in a southerly direction and touches at all points the east side of the above tract and carries water in a southerly direction to various consumers of defendant." The complaint charges that, "for the first time during the season of the year 1921, and on or about the 5th day of May, 1921," the defendant caused said ditches to be filled with water and that immediately thereafter the water so turned thereinto broke through and overflowed the banks at a point in Lateral "A–3" 100 feet, approximately, south of the junction of said lateral with Lateral "A," with the result that the water flowed over the banks of said ditch and "through the breach therein made" continuously for twenty-four hours, approximately, so that "for a period of ninety days, more or less, as plaintiff is informed and believes and therefore alleges, from said 5th day of May, 1921, the said 26 acres . . . were flooded and water stood thereon at depths of from six to eighteen inches, and that thereafter continuously, until on or about the 1st day of October, 1921, water seeped through the said Laterals . . . on to said lands, keeping it in a saturated and soggy condition." The complaint alleges that, because of the flooding of said lands and the seepage referred to, more than 1,500 of the prune trees standing and growing thereon were "utterly destroyed and the entire orchard was rendered wholly unfit for cultivation and useless for any purpose whatever, to the great injury, loss and damage of plaintiff." The complaint charges that the inundation of plaintiff's land and the consequent destruction of his trees and injury to his land were due entirely to the carelessness and negligence of the defendant, either from the negligent construction of said ditches or from carelessly and negligently turning into said ditches and so forcing them to carry an excessive amount of water, or from both causes, and but for such carelessness and negligence the injury to plaintiff's land and the destruction of the trees thereon would not have occurred.

The damages claimed and asked for by plaintiff are: For the destruction of the trees, $13,200; for the loss of the beneficial use of said land by reason of the flooding thereof,

as alleged, for the years 1921 and 1922, $1,300; as for special damage, by reason of the alleged necessity of the construction by plaintiff of a ditch paralleling the ditch of defendant on the north and east sides for a distance of not to exceed 30 feet, at a cost of $3,500, approximately, for the purpose of draining the land of plaintiff and carrying off the seepage water from defendant's canal, the total amount of the damage being the sum above stated.

The answer, after certain formal denials, admits: That for the first time, defendant, in May, 1921, turned water into and through the ditches referred to in the complaint and carried water down said ditches to the vicinity of plaintiff's said lands, but denies that at the time mentioned that there was carried through said ditches an excessive amount of water; "that it is a fact, however, that, on the 6th day of May, 1921, a small break occurred in Lateral A–3 . . . through which water flowed out and upon plaintiff's land for a period of not to exceed six hours," but alleges that the said break was of such a nature as to have been unavoidable in the construction and maintenance of ditches, particularly during the first year of their use, and further alleging that defendant closed the break within a period of six hours after it occurred, and that thereafter "and as soon as defendant could take the necessary apparatus upon the ground, it proceeded to and within a period of not more than twenty-five days from the occurrence of said break defendant caused said water to be pumped off said land, and no more breaks in said ditches or any thereof and no more water escaped from defendant's said ditches upon any of plaintiff's said land during said year by breaking of ditches nor did any material or injurious amount of water during said year pass from defendant's said ditches to and upon plaintiff's land by any other means whatsoever." The answer proceeds to allege that the lateral ditch from which flowed the water on to plaintiff's land, as set forth in the complaint, was maintained along the north line of plaintiff's land at the request and for the benefit of plaintiff, so that the latter's land could be irrigated by water from defendant's said ditch. It is further likewise alleged that "plaintiff had and maintained another ditch or lateral running along the entire south line of his said orchard tract . . . through which he took and received from defendant water

which he carried through said lateral for his own use and benefit and in addition thereto upon the remainder of plaintiff's said land lying immediately south of that in said complaint described and consisting approximately of 600 acres, upon which plaintiff, during the year 1921 cultivated and grew a rice crop, for the growing of which he procured from defendant and used thereon water during the whole of the rice cropping season of 1921.'' It is alleged by defendant that the drainage from plaintiff's land which was used in rice growing is in a northerly direction and ''over and across plaintiff's orchard, described in the complaint,'' said land or orchard being ''situated in a swale, hollow or depression in plaintiff's said land; that the land itself is inclined to adobe and poorly fitted for the growing of an orchard, and owing to the unfavorable location of said orchard, particularly in view of the large amount of water which plaintiff took upon his own land for rice growing, and the drainage water escaping from plaintiff's said rice land, by both surface and subterranean flow over, to and upon said orchard, the short time said water escaped from said plaintiff's said ditch as aforesaid, laid upon a portion of said orchard, not exceeding in all four acres, did not materially affect said orchard, and the results shown there now would have been the same had such break in plaintiff's said ditch or canal not occurred.''

As a special defense, the defendant charges that the overflow of plaintiff's orchard was wholly occasioned through plaintiff's own negligence, as follows: That well knowing that the 26 acres of land which he planted in prune trees were entirely unfit for the growing of prune trees by reason of its location or physical relation to his 600-acre tract devoted to rice growing, he carelessly, negligently, recklessly, and without the exercise of ordinary caution and care ''set out his said orchard in an unfavorable position and place therefor''; that, upon and after receiving the water furnished him by defendant at his request to be used in the irrigation of the said 600-acre tract upon which he was growing rice, plaintiff carelessly, negligently, and without the use of ordinary care, permitted said rice water so brought and used on said 600 acres to escape ''by both surface and subterranean flow over, to and upon said orchard, which saturated and kept saturated the ground in said

orchard during said summer of 1921 and 1922 and 1923, and if, as a matter of fact, any trees in said orchard were killed by water during said period or at all, they were so killed because of such water negligently by plaintiff permitted to go upon said orchard." The answer also specifically denies that plaintiff's trees or any of them were destroyed and that plaintiff suffered any damage as alleged in the complaint.

Upon the issues as thus framed, the cause was tried and submitted to the jury, with the result as above stated.

Counsel for plaintiff expressly admit in their briefs that the evidence is in substantial conflict upon the claim of plaintiff that the defendant's negligence in maintaining lateral ditches described in the complaint was a direct contributing cause of the damage to plaintiff's orchards. It is contended, however, as is to be implied from the defendant's answer, that such negligence was not the sole cause of the damage, but that much of the injury to the plaintiff's orchards was due to seepage or a subterranean flow of waters from certain rice-fields situated in near proximity to and south, southeast, and east of the orchards. One of these rice-fields, a tract of approximately 600 acres of land, and situated east of the orchards, belonged to plaintiff. Counsel for defendant also make this statement in their opening brief: "Respondent claimed damage in his complaint in the sum of thirteen thousand two hundred dollars and the jury awarded him five thousand dollars. Of course, we believe that the jury had no right to award any damage at all and that if any were awarded the sum specified by them in their verdict was grossly excessive, *but we are also aware of the fact that we are dealing with a matter that went to the jury for consideration. . . .* We must also admit that the amount of damages awarded, while apparently very excessive, finds some support in the testimony of Mr. Leonard A. Walton." But while making those admissions, counsel for the defendant, nevertheless, insist that the evidence supporting the verdict was of so slight or unsatisfactory a character as to have made certain alleged errors of law occurring in the course of the trial singularly prejudicial to the substantial rights of the defendant in the trial of the case. A careful review of the evidence forbids our assenting to that proposition, assuming that there is merit in the con-

tention that the rulings referred to were erroneous. Those rulings are three in number, the first of which involves the action of the trial court in admitting in evidence, over objection by defendant, a certain letter addressed to plaintiff by an engineer employed by defendant and which had reference to the break in defendant's ditch and in which the writer, among other matters therein stated, admitted that the damage to plaintiff's property was caused in part by water which flowed over and upon the orchards from the defendant's ditch by reason of the break occurring therein. The other assigned errors arise from certain instructions embraced within the court's charge to the jury.

The evidence shows, as the complaint alleges, that, on the fifth day of May, 1921, the defendant, for the first time after the lateral ditches mentioned in the complaint were constructed, turned into said ditches a flow of water equal to the capacity thereof, that these laterals bordered plaintiff's orchard on the east and the north, that during the nighttime between the fifth and sixth days of May, the bank of the east lateral, designated in the complaint as "Lateral A-3," gave way to the pressure of the water, causing a break in said bank covering a space in width of several feet and three and one-half to four feet deep; that the water from said lateral flowed in a large volume over and upon the orchard of plaintiff; that, besides flowing through said breach, water also passed through numerous cracks or interstices in the banks of both laterals; that the water then flowing on the low part of the orchard of plaintiff developed into a large pool, approximately "knee-deep," and within three days from the time of said break and the overflowing of the water from the said ditches on to and over said orchard, approximately 1,000 prune trees of said orchard were destroyed. One Snyder was, at the time of the break and had been for some time prior thereto, foreman and in charge of plaintiff's orchard. He testified that, early in the morning of May 6th, he discovered the break and that the orchard was covered with water; that not only was water passing through the break "good and fast," but was also passing over the banks and through the cracks in the banks for a distance along the lateral of from 120 to 150 feet. This witness stated that he immediately notified the man in charge of defendant's ditches at the "ditch

camp," located about a mile east from the point where the break occurred, of the break; that the water was thereupon "shut off" so that it would not pass through the laterals; that, notwithstanding the shutting off of the water from the laterals, the break in the ditch continued to grow in size and the water still therein to flow over and upon the orchards; that he attempted to stop the flow by depositing sacks of dirt in the break. It was further shown that about three days after the break the defendant installed a pumping equipment in the orchard and proceeded to pump the water therefrom; that the pumping was continued practically through the entire summer and the water not entirely pumped from the orchard until the month of September or October, 1921. Further recapitulation herein of the testimony as to the break and the overflowing of plaintiff's orchard by the water from the ditch by reason of the break and of the existence of cracks in the banks of the laterals need not be made, since the fact of the break and the fact of the water from the ditch flowing in large quantities upon plaintiff's property are admitted, as is also the fact that there is evidence which supports the amount of the damages awarded. But it is important, as showing the faulty construction or careless maintenance of the ditch, to state that one Buckner, who was a ditch-tender in the employ of the defendant for a month prior to and at the time the break occurred, testified that on each of three successive days immediately preceding the time the water was turned into the laterals on the fifth day of May, 1921, he was engaged in removing from the ditches or laterals weeds and dirt, preparatory to the turning water into the laterals from the main canal, and that while so engaged he observed that the banks of the laterals "were cracked and low in places and uneven"; that "in some places the ditch was in good condition, but other places the banks were cracked for a space of one hundred feet or more in spots all along the canal." This witness testified on cross-examination: "Q. How many of those cracks did you see on A–3? A. I didn't count them; they were all along the whole levee. Q. How many did you see? A. I don't know. Q. Would you say there was one hundred of them? A. I would say there was several thousand of them." The witness stated that he went to where the break occurred on the 6th of May, about 10 o'clock

A. M. As to what he then observed, he testified, on cross-examination: "Q. How many breaks did you find? A. One break. Q. And that was as you have described it, about ten feet wide? A. Yes, sir. Q. Did you find water running out of that levee at any other place except at that break? A. Yes, sir, through the cracks. Q. Where? A. All along the east side. Q. What? A. As far as the water was at that time." This witness further testified that one Sitton, then the water-master of defendant, and two other employees thereof, went over and along the laterals for three days immediately before the water was turned into the laterals on May 5th and saw the cracks in the banks thereof.

The theory of the defense, as has before been stated and as is indicated by the answer of the defendant, is that the use of the large quantities of water necessary for the growing of rice upon the rice-fields situated not far distant from the plaintiff's orchards had the effect of raising the subterranean water plane of said rice lands, with the result that the water from that source had continuously flowed underground in such large quantities to the orchards as to destroy the roots of the prune trees, it being a matter of common knowledge that fruit trees require a much smaller amount or acre-feet of water to sustain them than is required in rice culture, and that to give to such trees water much in excess of what, according to their nature, they require will generally result in their destruction. The distance of the rice-fields from the plaintiff's orchard on the south and west thereof is, according to the evidence, over a quarter of a mile, and the distance of such fields from said orchards on the north is about two and a half miles. It was admitted by defendant's expert witnesses that the general subterranean drainage from these rice-fields is to the south and west, or, in other words, from the direction of the orchards; but the theory was and is (and the expert witnesses of defendant testified to that effect) that, due to the large quantities of water used on said rice-lands in the two or three years preceding the time at which the break occurred, a water mound developed underground or beneath the surface of the rice-lands, the effect of which was to raise the water plane or table below the ground an average of eleven feet over the whole of the acreage of the rice-lands—some 9,000 acres in the aggregate; that the result of this

increase in height of the water plane in said lands was to force the underground drainage from its natural flow and turn it in the direction of and to the orchards of the plaintiff, thus causing the roots of the prune trees to remain in standing water. Whether the testimony of the expert witnesses in support of that theory was of sufficient probative force to overcome the case made by the plaintiff presented a question solely for the jury to determine. The fact that the bank of the lateral ditch yielded to the force of the water turned into the ditch and caused the water to pass over and upon the plaintiff's orchard or portions thereof is admitted. There was testimony, as we have shown, that the lateral in which the break occurred and from which the water flowed upon and inundated portions of the orchards was in very poor condition for holding or carrying water in quantities sufficient to be used for irrigation purposes because of the large number of cracks or interstices therein from which the water could and did seep. There was testimony that within three days after the overflowing of the plaintiff's orchards by reason of the breaking of the bank of the lateral ditch almost a thousand trees died. It was further shown that, notwithstanding that in the two years (1922 and 1923) immediately succeeding the year 1921, in which the damage complained of here occurred, the rice lands in the vicinity of plaintiff's orchards were flooded with water, still there was testimony to the effect that the only trees found to be destroyed or dead on said orchards were in that portion of the orchards which was flooded from defendant's ditch in 1921. This testimony, it will be noted, tends to dispute the theory upon which the defendant relied to overcome the showing made by the plaintiff in support of the allegations of his complaint.

[1] Thus it will be observed that the most that can be said of the question whether the damage to plaintiff's trees was wholly due to the flooding of his land by the water from the defendant's ditch or was caused by the joint action of the water thus thrown upon the orchard and the percolating waters from the rice-fields is that thereon there existed and does exist a conflict in the evidence. Of course, in that situation, so far as the evidence is concerned, the verdict of the jury, which necessarily implies a finding that the proximate cause of the damage was the negligent acts

of defendant in the construction and management of its ditch, is conclusive upon this court.

[2]    We are now brought to a consideration of the alleged errors occurring in the trial of the case. The letter above referred to as having been erroneously, and to the prejudice of the rights of the defendant, admitted in evidence against the latter's objection, was addressed to plaintiff by Mr. Norton Ware, chief engineer of defendant, and was offered and received in evidence while plaintiff was under direct examination. The letter, after stating that a careful investigation of plaintiff's "orchard damage" had been made, and describing the conditions existing in the vicinity of the orchard, stating that the land, because of its character and its situation with reference to the rice-fields, is not well adapted to the development of a thriving orchard under the "present irrigation methods in the vicinity" of the orchards, proceeds as follows:

"The value of the orchard has been placed at $185.00 per acre, the total valuation therefore would be $4,865 for the 26.3 acres planted to trees. The Canal Company has contributed to some extent to the general seepage condition in the orchard but the major portion of the damage is due to the rice irrigation. There is a total of 2,266 trees in the orchard of which 506 are dead and 571 not thrifty, or 47½ per cent of the orchard has been damaged. This makes the damage done amount to $2,300. The Canal Company is willing to assume $250.00 of this damage, being the amount of damage due to direct seepage from our canals along and adjacent to the trees affected."

The specific objection to the introduction of the letter in evidence was that it constituted an offer by defendant to plaintiff for a compromise and settlement of the claim of damages by the latter for the injury sustained, and that it was, therefore, inadmissible under sections 895, 997, and 2078 of the Code of Civil Procedure. Counsel for plaintiff stated, in reply to the objection, that his sole purpose in offering the letter was to show an admission by the defendant, through an authorized agent, that the defendant did contribute to the damage of plaintiff's orchard. The court, by its ruling admitting the letter, expressly limited the proof of the contents of the letter to the purpose for which counsel for plaintiff stated that they offered the letter in

evidence. The two sections first named of the code within the inhibitions of which it is claimed the letter falls provide that where, before the trial, the defendant offers in writing to allow judgment be taken against him for a specified amount, and the offer is not accepted, the offer and acceptance may not be given in evidence nor affect the recovery, otherwise than as to costs. Section 2078 provides that "an offer of compromise is not an admission that anything is due."

The letter was written by Ware a short time after the break occurred and nearly six months prior to the filing of the complaint herein. There is no evidence in the record showing that, at any time, either prior or subsequent to the writing of the letter, or prior or subsequent to the filing of the complaint herein, any negotiations were opened or pending between plaintiff and defendant looking to a compromise or settlement of any compensation which plaintiff might claim for the damage to his orchards. No question was asked plaintiff on cross-examination by defendant's counsel as to any proposition of compromise having been made or discussed between the parties, nor was Ware, who testified for defendant, asked by counsel for the latter whether any conversations or conferences or negotiations looking to a compromise were had at any time between the parties. If any such conferences or negotiations had taken place prior to the writing of the letter or at any time, it may be assumed that the fact thereof would have been brought out at the trial. The letter does not contain a direct or definite proposition to settle any claim which plaintiff might make. But, conceding, as well we may, that it contained a proposition to compromise, it did so upon an admission by defendant of liability for the damage, the offer to settle, however, being for much less than was and is claimed by plaintiff, and, therefore, the trial court cannot be justly charged with an abuse of discretion in admitting the letter in evidence as in proof of such admission. The rule in this regard is well stated in *Hartford Bridge Co.* v. *Granger*, 4 Conn. 142, 148, as follows:

"The law on this subject has often been misconceived; and it is time that it should be firmly established. It is never the intendment of the law to shut out the truth; but to repel any inference which may arise from a proposition

made, not with design to admit the existence of a fact, but merely to buy one's peace. If an admission, however, is made because it is a fact, the evidence to prove it is competent whatever motive may have prompted the declaration. . . . The question to be considered is what was the view and intention of the party in making the admission; whether it was to conceive a fact hypothetically, in order to effect a settlement, or to declare a fact really to exist.''

In *Rose* v. *Rose,* 112 Cal. 341 [44 Pac. 658], an action for divorce, in a letter written by the husband to the wife, the former offered to divide the property as in settlement of their property rights, and described it as community property. The offer of the letter in evidence was objected to on the ground that it was an offer of compromise which was not accepted by the wife. The trial court admitted the letter, however, and on appeal the ruling allowing the letter in evidence was assigned as error and prejudicial, to which the supreme court, through the late learned Judge Van Fleet, replied: ''The Court did not err in admitting, on the issue as to the character of the property, the paper signed by the defendant, in which he offered to divide the property and described it as community property. It was admitted solely on the question as to whether the property was community or separate, and for this purpose it was proper as a declaration by the defendant, even conceding that the paper is to be regarded as an offer of compromise.'' (See, also, *Donley* v. *Bailey,* 48 Colo. 73–76 [110 Pac. 65]; *Dunlap* v. *Montana-Tonopah M. Co.,* 192 Fed. 714; *Teasley* v. *Bradley,* 120 Ga. 373, 375 [47 S. E. 925]; *Kennell* v. *Boyer,* 144 Iowa, 303 [Ann. Cas. 1912A, 1127, 24 L. R. A (N. S.) 488, also, footnote at page 489, 122 N. W. 941].)

In *Batchelder* v. *Batchelder,* 2 Allen (Mass.), 105, it is said that ''whether or not such admissions are by way of compromise and to buy one's peace or are mere admissions of liability and express or implied promises to pay, are primarily questions of fact for the trial court in determining the admissibility of testimony. (See, also, *Greenfield* v. *Kennett,* 6 N. H. 419 [45 Atl. 233]; *Langdon* v. *Ahrends,* 166 Iowa, 636 [147 N. W. 940, 941].)

[3] The following instruction, given by the court at the request of plaintiff, is criticised as invading the domain of fact:

"You are instructed that if you find that water escaped through or over the banks of said lateral A–3, or seeped or percolated from or out of such lateral A–3 or other canal or ditch of defendant company, the mere fact of such escape of water as aforesaid, is in itself sufficient evidence to prove negligence on the part of defendant canal company, and if you find that such negligence resulted in damage to the premises of plaintiff and to the fruit trees thereon, your verdict should be for the plaintiff for such sum as he has suffered therefrom, not exceeding the sum claimed in the complaint, to-wit, $13,200.00.''

It is said that by giving the above instruction the court practically took the case from the jury. In support of this conclusion the defendant cites a number of cases holding that a canal company is not an insurer against all damages arising from its ditches, but is required to exercise reasonable or ordinary care only in the construction, maintenance, and operation of its ditches, or, in other words, is to be held only to the usual and ordinary course and manner of constructing its irrigating system. (See *Nahl* v. *Alta Irr. Dist.*, 23 Cal. App. 333 [137 Pac. 1080]; *North Stirling Irr. Dist.* v. *Dickman*, 59 Colo. 169 [Ann. Cas. 1916D, 973, 149 Pac. 97]; *Hunt* v. *Sutter-Butte Co.*, 66 Cal. App. 363 [225 Pac. 884].) The cases named hold as counsel for defendant contend, and the court below, in addition to the instruction complained of, also gave instructions in accord with the theory upon which those cases proceed. The instruction under criticism here, however, was based upon and is supported by what the supreme court said in denying a petition for a hearing of the case of *Tormey* v. *Anderson-Cottonwood I. Dist.*, 53 Cal. App. 559, 568 [200 Pac. 814]. The exigencies of this case do not require us to attempt to differentiate, even if it may be done, between the case just named and the instant case upon the theory of a difference in the facts of the two cases, since it is plainly true that, whether the instruction correctly or incorrectly states the law, in so far as it is applied to this case, the giving of it cannot be held to have worked prejudice as against the defendant, in view of the fact that it (defendant) expressly admitted liability, at least in part, for the damage of which plaintiff here complains. And this is true, even though such admission was limited, as indicated, since the

question of the defendant's liability, whether for any, or for all, or for only a part, of the damage, was essentially an issue in the case under the plea of defendant that the damage was due entirely to the subterranean water flowing into the orchard from the rice-fields, the admission that it was in part responsible for the damage and the undisputed evidence that the portions of the orchards damaged were inundated by the water passing through the bank of the ditch and the interstices therein.

[4] The court told the jury that, in arriving at the amount of any damages they might assess against defendant and award the plaintiff, they were "to determine the difference, if any, between the value of plaintiff's premises, including the growing fruit trees thereon, immediately before they were damaged by reason of the negligent acts or omissions of defendant, if any, and the value of the same premises after they were so damaged, *taking into consideration the detriment, if any, resulting by reason of the negligent acts and omissions, if any, of defendant, or certain to result in the future,*" etc.

The defendant assails the part of the instruction which we have italicized as so extending the scope of the inquiry as to the damage suffered by the plaintiff as to have justified the jury in taking into consideration, in assessing the damages, some other damage which the defendant might cause to plaintiff's property by some future negligent acts or omissions in the maintenance of its ditches—that is, damage which might be so caused after the sixth day of May, 1921, and counsel for defendant assert that the "jury probably" so understood it. Save and except the words in italics, the instruction is free from objection. To the extent of those words, the instruction is awkwardly expressed, to say the least of it. But the court, by those words, undoubtedly intended to say what it said in another of its given instructions, to wit: " . . . You are entitled to consider not only the damage that has heretofore visibly occurred, if any, to plaintiff's premises and to the growing fruit trees thereon, but also the damage, if any, to said premises and to said trees that is certain to result in the future as the direct and necessary result of *the* acts or omissions of said defendant," the language "certain to result in the future,"

being specifically confined in other instructions, as well as in the rulings of the court as to the evidence addressed to the question of damage, to the damage caused in the year 1921, as alleged in the complaint. Indeed, a careful reading of the italicized portion of the criticised instruction must at once convey to the mind that the court predicated the expression, "certain to result in the future," entirely upon the "negligent acts and omissions" alleged in the complaint. Paraphrasing or amplifying the italicized language of the instruction, as it is amplified by the other instruction given on the measure of damages, it clearly means and, of course, was intended to read: " . . . taking into consideration the detriment, if any, resulting by reason of the negligent acts and omissions, if any, as alleged in the complaint, or which may result in the future from the negligent acts and omissions so alleged." The jury, considering the instructions, as a whole, as it was their duty to do, and also having in view the rulings of the court confining the evidence to the proof of such damage only as might have been done to plaintiff's property in the year 1921 from the overflowing of the water therein from defendant's ditch on May 5th or 6th of that year, certainly could not have understood the italicized words to mean anything other than as thus amplified and construed. Indeed, the proposition which the instruction would state under the construction thereof by counsel for defendant would be palpably absurd, so plainly so, indeed, that the absurdity would readily be perceived by any layman possessing ordinary intelligence.

The counsel for the defendant in their brief set forth a number of instructions which they submitted, but which the court refused to give to the jury and in this it is asserted that the court committed prejudicial error. The counsel do not point out that the instructions preferred by them and refused by the court announced any principles of law applicable to the case which were not stated in the charge of the court to the jury. [5] All that counsel say in regard to the action of the court in refusing to allow said instructions is that they "should have been given." This is not sufficient to justify a review of the assignments in that particular. The charge of the court seems to have covered every rule or principle of law pertinent to the issues as made

by the pleadings and developed by the proofs necessary to an enlightened consideration of the evidence by the jury.

The judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 22, 1926.