[Civ. No. 18568. First Dist., Div. One. Jan. 14, 1960.]

CLARENCE P. ANDERSON, Respondent, v. PHILIP YOUSEM et al., Appellants.

Julian H. Weiss for Appellants.

Leonard J. Dieden, Bernard Allard and Fred F. Cooper for Respondent.

BRAY, P. J.—Defendants and cross-complainants appeal from a judgment in favor of plaintiff for $3,362 and interest, and granting a nonsuit in favor of plaintiff on their cross-complaint.

### QUESTIONS PRESENTED

1. Interpretation of the contract as to whether or not the $3,362 was to be paid out of a particular fund which never came into existence.

2. Was the nonsuit proper?

3. Denial of admission in evidence of a certain letter.

### RECORD

Plaintiff, claiming performance, sued for $3,362 alleged to be due under the contract hereafter discussed, with a second cause of action on common count. Defendants denied the indebtedness and cross-complained that the payment of said sum was conditioned upon the consummation of the sale of

Ukiah property described in the agreement and from the moneys to be obtained from such sale and asked that the contract be reformed, because of the mistake of the parties, to so state. The court found that plaintiff had performed his obligations under the contract; that the property described in it was sold, and that the moneys to be paid plaintiff were not to be paid out of a particular fund. The court thereupon granted a nonsuit on the cross-complaint and gave plaintiff the amount sued for.

## The Contract

Plaintiff is a real estate broker and defendants are investors. For some time prior to November, 1956, the parties had been associated together in certain real estate transactions wherein they acquired certain real property in Ukiah, Susanville and Watsonville for the purpose of erecting buildings and leasing them to J. C. Penney Company. Plaintiff was to invest therein funds of defendants and manage the investments. For this he was to receive an equity interest. The parties became dissatisfied and met at the Clift Hotel and decided to wind up and terminate their association. The Susanville property had been sold but the proceeds therefrom were still in escrow pending the performance of certain conditions required by the buyer. Plaintiff claimed that he had $3,362 coming as his interest in the Susanville property. The evidence is conflicting as to just what was said at the Clift Hotel meeting. At any rate, it was agreed that defendants were to draw up a written agreement terminating their relationship and settling their differences, and send it to plaintiff for approval. Following the meeting defendants had their accountant prepare an agreement which was sent to plaintiff unsigned. The parts of the agreement which are pertinent here are paragraphs VI and VIII.

Paragraph VI gave plaintiff, or his nominees, the right within 15 days to purchase the Ukiah property for $35,500 cash plus the assumption of the existing encumbrances and the Penney lease.

Paragraph VIII provided: ''Upon the procurement by Anderson of the extension of time referred to in paragraph III hereof, Yousem and Hart will authorize the payment of $3,362.00 to Anderson from the escrow opened for the sale of the Susanville property.'' The extension of time referred to the time of completion of the building provided in the Penney Company lease of the Ukiah property.

When plaintiff received the proposed agreement he changed the ''15 days'' in paragraph VI to ''26 days,'' signed the

agreement and forwarded it to defendants, accompanied by a letter. In this letter plaintiff referred to the change he had made, giving his reasons therefor. He further stated, "There are a couple of points that I must clarify with you with regard to this agreement." One of them reads, "I now refer you to Paragraph 8 on Page 4 which provides that you are to pay me the sum of $3,362 out of the funds in escrow in the Susanville deal. Under the circumstances, there is nothing to do except to retain the funds in escrow until this entire matter has been settled in accordance with the agreement, because we still have the matter of the cost of painting the white lines on the parking lot before Penney finally approves of the job."

Before signing the agreement, defendants changed paragraph VIII so that it read, "Upon the procurement by Anderson of the extension of time referred to in paragraph III hereof, Yousem and Hart will authorize the payment of $3,362 to Anderson from the escrow to be opened for the sale of the Ukiah property." This changed the payment of the $3,362 from "the escrow *opened* for the sale of the *Susanville* property" as provided in the original agreement to "the escrow *to be* opened for the sale of the *Ukiah* property." (Emphasis added.) Initialing this change as well as the one made by plaintiff which he had initialed, defendants signed and sent the agreement to plaintiff for further initialing. Plaintiff then initialed the change in paragraph VIII and wrote defendants a letter in which, after stating that he had received "the revised and executed agreement," he stated that the draft which plaintiff had sent defendants had been drawn in accordance with the understanding of the parties at the Clift Hotel, but that defendants had redrawn it, and that notwithstanding the revisions plaintiff had signed it. Now it came back with a revision "of Paragraph 8 and, certainly, as revised, it is not in accordance with our understanding. However, rather than have further delay getting these matters concluded, I am going to accept it as revised, but I certainly protest it." The letter then stated that while plaintiff fully expected "to place the Ukiah deal in other hands" he could not guarantee "performance within the prescribed time and, therefore, in the event that it is not possible to comply with the terms of this latest agreement, it is definitely understood that our original agreements having to do with our respective interests remain in full force and effect." (Neither party relies upon this clause, each relying upon the agreement.)

Plaintiff procured the extension referred to in paragraph

III but did not negotiate a sale of the Ukiah property within the 26 days. Sometime later, another broker, not connected with plaintiff, made sale of the Ukiah property.

### 1. *Was the Payment Conditional?*

 The court, in effect, found that the reference in paragraph VIII of the contract to "the escrow to be opened for the sale of the Ukiah property" constituted a condition only as to the *time* of payment and not to the *fact* of payment. Defendants cite cases like *Martin* v. *Martin,* 5 Cal. App. 2d 591, 593 [43 P.2d 314], to the effect that where a party to a contract limits liability to pay to funds to accrue from a certain source, such party is not required to pay unless it is proved that there are funds in that source. However, the question here is, did the contract limit the liability to pay to a fund in an escrow to be opened if plaintiff or his nominees purchased the Ukiah property in 26 days?

The only expressed condition to be performed by plaintiff in order to receive the moneys he claimed due him as his interest in the Susanville deal, was that he procure an extension of time for the completion of construction on the Ukiah property. (This he did.) The agreement then states that upon his obtaining that extension, defendants "will authorize the payment" to him of $3,362 "from the escrow to be opened for the sale of the Ukiah property." In paragraph VI plaintiff had been granted the right for 26 days to purchase or obtain a purchaser for that property. While the agreement states that it is the desire of the parties to effect a complete settlement of their mutual rights and obligations, it is not clear from an examination of the agreement alone, whether the $3,362 to be paid plaintiff is a commission for selling the Ukiah property, a payment for getting the extension referred to, or is a payment of an indebtedness due from defendants to plaintiff. Moreover, such an examination leaves it uncertain as to whether or not the money was only to be paid if plaintiff or his nominees purchased the Ukiah property and as to whether or not the payment of the money was only to be out of the funds coming from such a purchase. Thus, taking the contract as a whole as we are required to do (*Sunset Sec. Co.* v. *Coward McCann, Inc.,* 47 Cal.2d 907 [306 P.2d 777]), it is ambiguous and therefore extrinsic evidence is admissible to construe it. Where upon the face of the written contract itself there is doubt, resort may be had to the surrounding circumstances to resolve that doubt, not by

showing that the parties meant something other than what they said but by showing what they meant by what they said. (*Crow* v. *P.E.G. Construction Co., Inc.* (1957), 156 Cal.App.2d 271, 278 [319 P.2d 47]; Civ. Code § 1647.) ▉ ". . . where parol proof is admitted for the purpose of assisting the court to ascertain the intention of the parties and where conflicting inferences may be drawn, it is the constitutional function and duty of the trial court to determine the meaning of the parties and such finding is binding on the reviewing court. . . . Therefore, when the construction of an oral contract or of an uncertain written agreement is with the aid of testimony not unreasonable or inconsistent with the evidence, the conclusion of the trial court will not be disturbed." (*Estate of Guasti* (1953), 117 Cal.App.2d 612, 617 [256 P.2d. 629].)

▉ In view of that rule and the fact that the trial court resolved the conflicts against defendants, it is clear that its finding that defendants were indebted to plaintiff in the sum of $3,362 plus interest and that the payment thereof was not limited to a particular fund, is well supported. Under the agreements of the parties plaintiff was to receive a share of the proceeds of the three investments. The Watsonville property and the Ukiah property had not been sold. The Susanville property had been sold and said amount represented his share therein. Under the agreement in question here plaintiff was willing to risk his right to profits from the Watsonville property to his ability to sell that property for a sum in excess of the amount stated in paragraph V in which he was granted the right to sell it and to retain all proceeds in excess of the stipulated sum. Likewise as to his interest in the Ukiah property he was risking it in his ability to sell it for a sum in excess of the price specified in paragraph VI. But he was not willing to risk his right to the moneys due him from the Susanville sale, although he was willing to change the time and source of payment.

## 2. *Nonsuit.*

▉ In their first amended cross-complaint defendants alleged that prior to the presentation of the agreement, the parties had agreed that $3,362 was to be paid out of the sale by plaintiff of the Ukiah property, and expressly conditioned upon the consummation of such sale. They then allege that they, the defendants, mistakenly and inadvertently prepared the written agreement, in such manner that paragraph VIII provided that the money was to be paid out of the Susanville

escrow; that after execution of the agreement by plaintiff, defendants discovered their error and struck out the word "Susanville" and inserted "Ukiah," believing that such change would make the agreement represent the real agreement of the parties; that the agreement was returned to plaintiff and defendants phoned plaintiff expressing defendants' belief that the agreement, as corrected, represented the intent of the parties and plaintiff accepted said change by initialing the agreement; that the agreement is ambiguous in not making payment contingent upon said sale.

The cross-complaint is indefinite and does not allege a mutual mistake in the execution of the agreement but only a unilateral mistake. Likewise the evidence did not show a mutual mistake. The evidence clearly at best shows that if there were a mistake it was a unilateral one. The parties met at the Clift Hotel to discuss their difficulties. Defendant Yousem testified that plaintiff said he had $3,362 coming from the Susanville sale. "I told him that was not our agreement; however, we would clean up this deal," that defendants would be willing to pay plaintiff that sum providing he would finish up the Ukiah sale and also sell the Watsonville property, and that plaintiff "agreed to do it on the basis on which we discussed it *and on which we drew the agreement for.*" (Emphasis added.) The agreement was then prepared by defendants' accountant. (Defendants' attorney had prepared an agreement but when defendants went over it in their accountant's office they made changes which were embodied in the agreement prepared by the accountant.) Defendant Hart testified that while it was discussed that plaintiff would dispose of the properties he could not say that plaintiff agreed to the proposals of himself and defendant Yousem. Defendants were to draw up an agreement to be sent to plaintiff for his approval. The agreement was sent. The only condition set forth in it for the payment of the $3,362 was the obtaining by plaintiff of the extension referred to in paragraph III. The agreement provided that the money was to be paid from the escrow already opened dealing with the Susanville property. Plaintiff signed the agreement, making only a change of the time given him to sell the Ukiah property. Taking the testimony of the defendants and their actions up to this point, there is no evidence that the agreement was signed by plaintiff through any mistake of his. When defendants received the agreement they made but one change in it, namely, that defendants would authorize the payment "from the escrow *to be opened* for the

sale of the *Ukiah* property'' instead of ''from the escrow *opened* for the sale of the *Susanville* property.'' (Emphasis added.) Immediately upon receiving the agreement as changed, plaintiff wrote defendants that this change was not in accordance with ''our understanding'' but that he would accept the change to avoid delay, although he was protesting it, and that if he could not sell the Ukiah property ''it is definitely understood that our original agreements having to do with our respective interests remain in full force and effect.'' Thus, again, there is no evidence of any mistake of plaintiff in signing the agreement. It is clear, and there is no evidence to the contrary, that plaintiff at all times considered that the only condition attached to his getting the money was the requirement that he obtain the extension referred to in paragraph III. Thus, defendants failed to make out a prima facie case of mutual mistake.

Although, disregarding the conflict in evidence, defendants may have made a prima facie showing that they were mistaken as to the meaning of the contract, they nevertheless failed to allege or prove the necessary elements of a cause of action for reformation based upon a unilateral mistake.* Applicable here is the following statement from *H. Moffat Co.* v. *Rosasco,* 119 Cal.App.2d 432, 441 [260 P.2d 126] : '' '. . . The rules governing reformation of written contracts are set forth by the Supreme Court of California in the case of *Bailard* v. *Marden* (1951), 36 Cal.2d 703, at 708-709 [227 P.2d 10], in the following terms :

'' ' ''Section 3399 of the Civil Code provides that when, because of fraud or mistake, '. . . a written contract does not truly express [the intention of the parties, it may be revised . . . so as to express] that intention. . . .' The purpose of reformation is to effectuate the common intention of both parties which was incorrectly reduced to writing. To obtain the benefit of this statute, it is necessary that the parties shall have had a complete mutual understanding of all the essential terms of their bargain; if no agreement was reached, there would be no standard to which the writing could be reformed.

'' ' ''Otherwise stated, '(I)nasmuch as the relief sought in reforming a written instrument is to make it conform to the

---

*The court's findings on the interpretation of the contract were a finding against defendants' version of the understanding of the parties, and based thereon, the court, had it not granted a nonsuit on the alleged cause of action for reformation, would have had to find against defendants.

real agreement or intention of the parties, a definite intention or agreement on which the minds of the parties had met must have pre-existed the instrument in question.' (Citations.) Our statute adopts the principle of law in terms of a single intention which is entertained by both of the parties. ██ 'Courts of equity have no power to make new contracts for the parties, . . . (N)or can they reform an instrument according to the terms in which one of the parties understood it, unless it appears that the other party also had the same understanding'. (22 Cal. Jur. § 2, p. 710.) If this were not the rule, the purpose of reformation would be thwarted." ' " The nonsuit was properly granted.

3. *Admissibility of the Letter.*

[██ On May 28, 1957, some five months after the making of the agreement, plaintiff's attorney wrote defendant Hart, "The records indicate that you and Mr. Yousem are indebted to Mr. Anderson in an amount in excess of $9,000 net. For purposes of compromise he has agreed to accept the sum of $6,500 in satisfaction of said indebtedness. You are hereby granted twenty (20) days from date within which to accept this offer." The letter was offered by defendants to show that plaintiff had assumed a position in this case contrary to that shown by the letter. The letter does not show this. It is more consistent with the position taken by plaintiff in his letter of December 18 when he stated in effect that if he could not sell the Ukiah property within the time given the original agreements were to remain in effect. Moreover, offers of compromise of this kind are not admissible in evidence. (See *Estate of Johanson* (1943), 62 Cal.App.2d 41 [144 P.2d 72]; *H. D. Taylor Co.* v. *J. H. Jonas & Sons* (1931), 118 Cal.App. 208 [4 P.2d 797]; Code Civ. Proc., § 2078; 11 Cal.Jur.2d, § 15, p. 22.) The letter was properly excluded. Even if it should have been admitted, its exclusion was without prejudice.

The judgment is affirmed.

Tobriner, J., and Duniway, J., concurred.