[L. A. No. 26507. In Bank. July 31, 1962.]

THE PEOPLE ex rel. THE DEPARTMENT OF PUBLIC WORKS, Plaintiff and Appellant, v. HUGO A. FORSTER et al., Defendants and Respondents.

George C. Hadley, Richard L. Franck, Thomas M. Dankert, Charles E. Spencer, Jr., and Robert E. Reed for Plaintiff and Appellant.

Henry A. Dietz, County Counsel (San Diego), and David B. Walker, Deputy County Counsel, as Amici Curiae on behalf of Plaintiff and Appellant.

John W. Solomon, Holbrook, Tarr & O'Neill, Francis H. O'Neill and Richard L. Huxtable for Defendants and Respondents.

Stanley B. Christensen, City Attorney (Fullerton), Willard Pool, City Attorney (Garden Grove), Calvin P. Schmidt, City Attorney (Cities of Villa Park, Fountain Valley and Los Alamitos), and James G. Rourke, City Attorney (Tustin), as Amici Curiae on behalf of Defendants and Respondents.

SCHAUER, J.—In this condemnation action plaintiff appeals from a judgment entered pursuant to a jury verdict awarding defendants $333,100 as the value of land taken for highway purposes, plus $30,000 severance damage, or a total of $363,100. As hereinafter appears, we have concluded that there is no merit in plaintiff's contentions, 1) that the trial court committed prejudicial error in receiving in evidence over plaintiff's objection an admission or declaration of value in a document referred to as an offer of "compromise" made by plaintiff's agent to defendants during negotiations prior to trial, and 2) that the court further erred in its awards of fees for an expert witness and of interest. The judgment should therefore be affirmed.

The land taken by plaintiff comprises a strip totaling 96.551 acres, which is part of a tract of 2,948 acres belonging to defendants and located near the town of San Clemente in Orange County. Plaintiff filed this action May 15, 1957. A first trial of the action, in 1959, resulted in a jury verdict awarding defendants $77,240.80 as the value of the land taken,

plus $25,660 as severance damages, or a total of $102,900.80. On defendants' motion a new trial was ordered, and resulted in the judgment from which plaintiff now appeals.

## The "Compromise" Offer

The written statement and offer made by an agent of plaintiff to defendants and admitted in evidence over plaintiff's objections was in the form of a letter directed to defendants' attorney Mr. Solomon. Such letter bears the date of September 10, 1958, and provides in part as follows:

"This is a confirmation of a telephone call I had with you on September 5, 1958. The State hereby offers you the sum of $218,000.00 for land and damages. This amount is a compromise figure based on the market value of the parcel as set out in the above mentioned suit. This offer shall continue in effect until 4:30 p. m. on September 17, 1958, and if not accepted on or before said date, this offer shall be considered to be officially revoked."

Before ruling on plaintiff's objection to introduction of the letter in evidence the court properly heard testimony and argument on the matter outside the presence of the jury. The extrinsic evidence, summarized below, supports the trial court's determination that the letter was not simply an offer of compromise but an admission as to the market value of the property. (See *E. K. Wood Lumber Co.* v. *Higgins* (1960) 54 Cal.2d 91, 94 [1-2] [4 Cal.Rptr. 523, 351 P.2d 795] ; *Woodbine* v. *Van Horn* (1946) 29 Cal.2d 95, 104 [1-4] [173 P.2d 17] ; *Stevenson* v. *County of San Diego* (1945) 26 Cal.2d 842, 844-845 [2] [161 P.2d 553].) The evidence above referred to is in substance as follows: Defendant's attorney, Mr. Solomon, testified that several days prior to September 10, 1958 (the date borne by the letter), Mr. Walls, the right of way agent who wrote the letter on behalf of plaintiff, telephoned the witness and "stated that he was unable to pay the price that Mr. Forster [defendant] thought his property was worth, because his department could only pay what they determined the property to be worth, and that they had determined that the property was worth $218,000.00, and that was their offer. . . . Mr. Walls said it was their practice to always confirm such conversations by letter. . . . This letter of September 10th was the confirmation of the conversation on, I believe it was September 5th or 6th. . . . During our conversation he made no breakdown [as to the severance damages]. . . . [H]e implied that with the underpass there was no severance damage. . . . He just told . . . [me] that the Division of Highways had

determined . . . what the property was worth and they had determined the property was worth $218,000.00.''

Mr. Lynch, a senior right of way agent for the Division of Highways, stated that he had authorized Walls to write the subject letter offering $218,000 to defendants; that the offer was ''based upon'' a conference between the witness and one Mr. Goode, an appraiser employed by defendants, and the letter was ''a result of that conference''; that during the conference the witness and Mr. Goode did not discuss the value of defendants' land but did discuss that of other properties in the same vicinity; that the offer was ''not based upon any appraisals''; that the letter is not in the usual offer form, which form does not contain the statement ''based on the market value of the parcel,'' but merely states ''We hereby make you an offer of X number of dollars for the purchase of your property,'' and the witness did not know why the usual form was not used; that as a general policy the right of way agents in making offers to buy are restricted to the highest appraisal, but ''there is an exception . . . This is one right here. . . . [I]t was . . . an effort on my part to compromise what I considered to be a very bad lawsuit, there was a lot of other aspects, potential damages, and so forth. . . . [I] felt that this [$218,000] would be a fair figure of . . . A compromise settlement . . . [but] I would assume the compromise would be *in my favor* or I wouldn't compromise.'' (Italics added.)

In certain ''appraisal sheets'' produced by the witness Lynch with respect to defendants' land and to other property in the area, in response to subpoena, and which bore a March 1955 date, the trial court particularly noted the following paragraph: ''The appraisals contained herein have been prepared for departmental use only and for the sole purpose of carrying on negotiations with the owners thereof and as a basis upon which offers of settlement may be made which are considered fair and equitable to both the owners and the department. In the event of a trial involving any issue of value, damages, severance or consequential or benefits, then each and every, all and singular matter, fact or things specified, set forth and referred to in these appraisals shall be deemed to have been made solely by way of an offer of settlement pending litigation and not otherwise.''

After hearing the above summarized testimony the trial court ruled that the subject letter would be received in evidence, subject to a limitation, hereinafter quoted, which excluded it from consideration insofar as it might constitute an

offer of compromise. Defendants had previously, and prior to presentation of plaintiff's case, introduced testimony on the questions of market value and of severance damage, as follows: The witness Brabant placed the value of the land taken at $3,500 per acre, or a total of $337,750, and severance damage at $113,450. Defendant Forster testified that the value was $4,000 to $4,500 per acre, or a total of $400,000, and severance damage was $100,000. The witness Holden placed the value at $5,000 to $6,000 per acre (which would total $482,500 to $579,000), but expressed no opinion as to severance damage.

At the conclusion of defendants' case and before plaintiff's witnesses had testified, the trial court pursuant to its ruling permitted the subject letter to be read to the jury, but first instructed the jury in the following language: "there has been a letter which has been by order of the Court received in evidence as Defendants' Exhibit K . . . [and which] makes reference to an offer to compromise the matters with which we are here concerned. An offer to compromise is not admissible in evidence as such. However, any declaration therein of facts involved in this case which are not mere concessions made for the purpose of the offer, but are statements of independent facts, are admissible against the party making them. You will therefore consider this matter for the limited purpose of any bearing it may have on the value of the property, but not for the fact of the offer itself. The law favors compromise and settlements, and the offer to pay a claim made to the defendant by an agent of the State may not be considered by you to be an admission by the State of liability to pay that amount or any other certain amount of money for the property." Thereupon the letter was read to the jury.

Defendants at this point also offered in evidence a transcript of the testimony given by their attorney, Mr. Solomon, out of the presence of the jury and summarized hereinabove. Plaintiff's objection to such testimony was sustained, however, despite the fact that plaintiff itself had earlier, during the hearing outside the jury's presence, made an "offer of proof" covering such testimony, and defendants had agreed that that "evidence may go in before the jury."

Plaintiff then presented its value testimony. Its witness Fisher testified to a value of $400 per acre, or a total of $38,620, for the land taken; and its witness Wood gave a total valuation of $43,500, or approximately $455 per acre. Both witnesses stated that their appraisals had been made subsequent to the date of September 10, 1958, borne by the subject letter.

An independent expert witness appointed by the court valued the land at $2,750 per acre, or a total of $265,512.50, and placed severance damage at $49,300.

Before submitting the case to the jury the court again gave an instruction, set forth in the footnote,[1] as to the limited purpose for which the letter of September 10, 1958, had been received. As already stated, the jury awarded defendants $333,100 (or approximately $3,450 per acre) for their land, plus $30,000 severance damage, and this appeal by plaintiff followed.

■ The rule that offers of compromise are not admissible in evidence as such is conceded by both parties to this action. The reason for the rule is that a person is entitled to endeavor to "buy his peace" without fear that his offers of compromise for such purpose will be used against him if not accepted. (See 4 Wigmore on Evidence (3d ed.) § 1061, p. 28; 31 C.J.S., § 285, p. 1040; *Rose* v. *Rose* (1896) 112 Cal. 341, 344 [44 P. 658]; *Smith* v. *Whittier* (1892) 95 Cal. 279, 298 [30 P. 529]; *Anderson* v. *Yousem* (1960) 177 Cal.App.2d 135, 144 [9] [1 Cal.Rptr. 889], and cases there cited; see also 4 Nichols on Eminent Domain (3d ed.), § 12.311 (2).) ■ Further, the law favors compromises. (*Potter* v. *Pacific Coast Lumber Co.* (1951) 37 Cal.2d 592, 602 [12] [234 P.2d 16]; *Estate of Johanson* (1943) 62 Cal.App.2d 41, 56 [21] [144 P.2d 72].)

■ Both parties likewise agree on the further rule that "the declaration [in an offer of compromise] of facts involved in the controversy which are not mere concessions made for the purpose of such offer, but are statements of independent facts, are admissible against the party making them." (*Rose* v. *Rose* (1896), *supra*, 112 Cal. 341, 344; see also 20 Am.Jur. 478-479;

---

[1]The instruction: "During the course of the trial a certain letter dated Sept. 10th, 1958 was received in evidence by which the Division of Highways offered the sum of $218,000 for the property here being condemned and damages stating that such amount was based upon the market value of the property. This letter was received not for any suggestion arising from a mere offer to compromise because an offer to compromise is not material and may not be considered but as an admission on the part of the Division of Highways that, at the time that the offer was made, it had some opinion as to the market value of the property together with the damages suffered to the remainder, if any, consistent with the fact stated in the clause 'based on the market value of the property.' It should not be regarded as being an expression of the present opinions of the Division of Highways or of its agents as to the market value of the property being taken as of the date of valuation. The law favors compromises and settlements and the offer to pay a claim made to the defendant by an agent of the State may not be construed by you to be an admission by the State of liability to pay that amount or any other certain amount of money for the property in this action."

31 C.J.S. § 287, pp. 1047-1049; *Truman* v. *Sutter-Butte Canal Co.* (1926) 76 Cal.App. 293, 304-305 [2] [244 P. 923]; *Scholes* v. *Silvius* (1922) 57 Cal.App. 305, 396-398 [1] [207 P. 291].)

But in application of the latter rule to the offer made in the case at bench, plaintiff and defendants part company. Defendants contend, and the trial court was of the view, that the words, "This amount [$218,000.00] is a compromise figure based on the market value of the parcel as set out in the above mentioned suit," constitute a statement or admission of fact with respect to value which although contained in the offer is separate and independent therefrom, and was therefore properly admitted in evidence. Plaintiff argues the contrary.

In Wigmore on Evidence (3d ed.) volume 4, section 1061, the author declares, at page 26, that the solution to the question of "Whether an *offer to settle a claim* by a partial or complete payment, amounts to an admission of the truth of the facts on which the claim is based, and is therefore receivable in evidence . . . is a simple one in its principle, though elusive and indefinite in its application; it is merely this, that a *concession which is hypothetical or conditional only can never be interpreted as an assertion* representing the party's actual belief, and therefore cannot be an admission; and, conversely, an unconditional assertion is receivable, without any regard to the circumstances which accompany it. . . .

" [P. 28] [I]f an express admission is in terms made, it is receivable, even though it forms part of an offer to compromise. . . .

" [P. 29] [I]t is apparent that the *occasion of the utterance* is not decisive; . . . it may or may not have occurred during negotiations for a settlement or a compromise. What is important is the *form* of the statement, whether it is *explicit* and *absolute*. If, making all implications from the *context and the circumstances* [italics added], the statement assumes the adversary's claim to be well-grounded for the mere purpose of discussing a settlement which will avoid litigation, and expresses nothing as to the terms of the specific claim, it is not an admission; nor is the party making it in any the worse condition . . . for having offered the full amount of the claim without any pretense of compromise. If on the other hand, the statement is explicit and absolute so far as appears, it is not saved by . . . its occurrence in the course of compromise-negotiations.

"This solution of the question is amply elucidated in the following passages:

"1822, Hosmer, C.J., in *Hartford Bridge Co.* v. *Granger*, 4 Conn. 142, 148: 'The law on this subject has often been misconceived. . . . It is never the intendment of the law to shut out the truth; but to repel any inference which may arise from a proposition made, not with design to admit the existence of a fact, but merely to buy one's peace. If an admission, however, is made, because it is a fact, the evidence to prove it is competent, whatever motive may have prompted to the declaration. . . .'

"1889, Doe, C.J., in *Colburn* v. *Groton*. 66 N.H. 151, 156 [28 A. 95]: 'The preliminary question always is, not merely whether an admission of a fact was made during a settlement or negotiation, but whether a statement or act was intended to be an admission. It is a question, not of time or circumstances, but of intention. On that question the time and circumstances may be material evidence . . . An offer of payment . . . is evidence, when the party making it understood it to be and made it as an admission of his liability. It is not evidence when he made it for the purpose of averting litigation, not intending to admit his liability. . . .' "[2]

██ That intention of the party is the crucial point also appears from the following language found in 31 Corpus Juris Secundum 1042-1043, section 285: "It is often difficult to determine in a particular case what amounts to an ordinary admission and what constitutes an offer of compromise . . . ; and the intention of the parties must be the guide in each case. If the proposal is tentative, and any statements made in connection with it hypothetical, if the offer was made to 'buy peace' and in contemplation of mutual concessions, it is as to such point a mere offer of compromise. On the other hand, if the intention is apparent to admit liability and to seek to buy or secure relief against a liability recognized as such, or if the party making the proposal apparently *intended* to make *no concession* but to exact all that he deemed himself entitled to, the proposal is an ordinary admission against interest and not an attempt to compromise." (Italics added.)

██ It seems at once apparent that in writing the letter offer involved in the case at bench the right of way agents,

---

[2]Liability as such is not at issue in this proceeding, inasmuch as the California Constitution provides, in section 14 of article I, that "Private property shall not be taken or damaged for public use without just compensation having first been made to, or paid into court for, the owner...." The amount of the "just compensation" and the evidence which is admissible in ascertaining the amount *are* at issue.

both Walls and Lynch, intended to make no concession on behalf of plaintiff but to exact all that plaintiff was deemed entitled to, and that the statements of value made both in the letter and in the oral offer conveyed to defendant's attorney, Mr. Solomon, were in no sense tentative or hypothetical. Rather, they plainly constituted positive declarations of fact intended to induce defendants to accept plaintiff's offer, based on plaintiff's asserted determination of the market value of the property. As declared by the learned trial court in ruling on the point, "it is inconceivable . . . that the words 'based upon the market value of the property,' were inadvertent words. It would have to stretch the reasonable construction of a communication to say that a letter writer, and particularly a right of way agent, would inadvertently or carelessly inject that into a communication.

"What is the rational thing to conclude? That the minds of the parties at that time were meeting on a figure of value and that this was not in any sense of the word a mere compromise of the normal type. In fact . . . Mr. Lynch said if he had not figured it was a good deal for the State, he would not have made the offer. He also, although not in these words, stated that it was a dangerous case from the standpoint of the State. Now, whether it be a public agency or a private individual, if he says, 'I will offer for your lawsuit so much money,' it's inadmissible. If he says, 'Your lawsuit is worth so much money,' it's admissible. If he says, 'I offer you so much money based upon the value of what your attorney offered to me,' it's not admissible as an offer of compromise, it's only admissible . . . for the purpose of bearing upon the value of the property . . . to the extent that it is an admission by the party who is going to have to pay of the value which he is getting and for which he should pay."

In the light of the evidence heard by the trial court, which was without substantial dispute with respect to the circumstances of the discussion and the offer, including the statements of facts therein both oral and written, made by plaintiff to defendants, the mere use in the subject document of the words "This amount is a compromise figure" could not operate to make inadmissible the assertions of market value made by plaintiff both orally to defendants' attorney, and in the written letter offer. ■ Although, upon objection by plaintiff, the trial court refused to permit the jury to hear the testimony of defendants' attorney concerning the oral offer and the accompanying assertions of right of way agent Walls that "they had

determined that the property was worth $218,000.00, and that was their offer,'' it seems that such testimony could also have been properly admitted in evidence. (See *California Home Extension Assn.* v. *Hilborn* (1951) 37 Cal.2d 459, 464 [1], 465 [3, 2b] [235 P.2d 369]; *Story* v. *Nidiffer* (1905) 146 Cal. 549, 551 [80 P. 692]; *Scott* v. *Sciaroni* (1924) 66 Cal.App. 577, 583-584 [4] [226 P. 827].) Thus in the overall picture plaintiff appears to have received even more favorable rulings than it was entitled to with respect to its value admissions. And where, as here, the testimonies from both sides seem to leave no rational doubt as to the nature of the pertinent statements, it is manifest that no error is shown in the limited submission to the jury of the letter in question. (See also *Truman* v. *Sutter-Butte Canal Co.* (1926), *supra,* 76 Cal.App. 293, 306 [2]; *Phoenix Assur. Co., Ltd., of London, England* v. *Davis* (1933) 67 F.2d 824, 825-826 [4, 5]; 31 C.J.S. § 289, pp. 1049-1050.)

### Expert Witness Fees

 Plaintiff also urges that the court erred in its award of $100 a day for fees for the expert appointed by the court to ''investigate and testify at the trial of such action relative to the fair market value of the property'' and severance damage. Section 1266.2 of the Code of Civil Procedure specifies a statutory fee of not more than $50 per day, which was the sole amount taxed to plaintiff as costs. The other $50 per day was ordered paid by defendants, to which defendants do not object. It thus appears that plaintiff was not injured and has no just cause for complaint on this score, even if we assume (without deciding) that in condemnation actions section 1266.2 controls over section 1871 of the Code of Civil Procedure.

### Interest

Finally, plaintiff complains of the award by the trial court of interest on the amount recovered by defendants, from the effective date of the order of possession. At the time of the trial (1960) section 1255b of the Code of Civil Procedure provided that ''If the plaintiff in a condemnation proceeding obtains an order from the court for possession of the property sought to be condemned prior to the trial of the action, then the compensation and damages awarded shall draw lawful interest from the effective date of said order.''

On March 15, 1957, the trial court issued its order authorizing plaintiff ''to enter upon and take immediate possession and use of said property, and plaintiff is hereby authorized

and empowered to . . . fully possess and use the said parcels of property. . . ." This order was served upon defendants on April 12, 1957, and the record indicates that it was delivered to defendants' attorneys on April 17, 1957. The trial court awarded interest on all unpaid portions of the judgment from April 17, 1957. Defendants had withdrawn certain amounts from time to time from sums previously deposited by plaintiff, and these were properly deducted for purposes of computing interest.

 Plaintiff's contention is that the trial court erred in refusing to permit plaintiff to present evidence that defendant had used the land "long after actual service of the order of possession, and therefore no dispossession occurred until April of 1959" and to prove the reasonable value of such alleged use as being in lieu of interest. As held in *People* v. *Podrat* (1961) 194 Cal.App.2d 696, 701 [2] [15 Cal.Rptr. 343], the contention is without merit; section 1255b of the Code of Civil Procedure as it then read made no mention of offsets, deductions, or "in lieu." Although as amended in 1961 the section provides for offsetting the value of possession and rents against interest, that amendment came subsequent to the dates here involved and is of no assistance to plaintiff in the present case.

For the reasons above stated the judgment is affirmed.

Gibson, C. J., Traynor, J., McComb, J., Peters, J., and White, J., concurred.

Appellant's petition for a rehearing was denied August 29, 1962.