[Civ. No. 985.   Fifth Dist.   Mar. 5, 1969.]

PACIFIC GAS & ELECTRIC COMPANY, Plaintiff and Respondent, v. HAROLD W. PETERSON et al., Defendants and Appellants.

Goldstein, Barceloux & Goldstein, P. M. Barceloux, Burton J. Goldstein, Albert E. Levy, Ralph Golub and David J. McKeown for Defendants and Appellants.

Peters, Fuller & Byrne, Richard H. Peterson, Charles 1. Van Deusen, Arthur L. Hillman, Jr., Charles W. Thissell, Richard J. Kohlman and Sanford M. Skaggs for Plaintiff and Respondent.

GARGANO, J.—Respondent brought this action in eminent domain to acquire an easement over the extreme southeast corner of appellants' land for the installation and maintenance of electric transmission power lines; the proposed easement extended beyond appellants' land in a northeasterly direction over adjoining privately owned lands and in a southwesterly direction over the state highway. At the conclusion of the trial the court found in favor of respondent on the issue of public necessity and entered judgment on the

jury's verdict fixing appellants' damages. Appellants appeal from the judgment and final order of condemnation.

The essential facts are these: Appellants' land was used to grow rice, and like other rice growing lands in the Sacramento Valley, was seeded, fertilized and sprayed from the air; the airplanes flew over the land in an east-west pattern and then over the adjoining land (hereafter referred to as the Duncan land) at a low altitude where they turned around in order to fly back over appellants' land on a parallel path in the opposite direction. Thus, at the trial appellants attempted to show the jury that in addition to taking an easement over appellants' land, respondent was also taking an easement over the Duncan land and proposed to install electric power transmission lines in that easement; they hoped to prove that the installation of power lines over the Duncan land substantially depreciated the value of their own land because it made it impossible for appellants to seed, fertilize and spray the land from the air.[1] However, the trial judge ruled the proffered evidence inadmissible on the ground that appellants could not recover damages attributable to the construction of power lines on someone else's property.

Subsequently, out of the presence of the jury, appellants asserted ownership of a prescriptive "avigation" easement over the Duncan land which they claimed would be destroyed by the installation of power lines on that land. Appellants' witnesses testified that flights over the Duncan land had continued yearly since 1943 at the rate of approximately 12,000 flights a year, and that it is the custom throughout the Sacramento Valley for rice growers to conduct essentially similar seeding, fertilizing and spraying operations over their own lands which necessitates flying at low altitudes over neighboring lands.[2] The court, however, found that appellants' evidence merely proved a permissive use of the air space over the

---

[1]Respondent's electrical transmission power lines are a part of its integrated Pacific Northwest-Pacific Southwest Intertie Project, and when installed are supported by towers 157 feet high, spaced about 1,354 feet apart, and dip from a maximum height of 157 feet to about 52 feet from the ground at a point halfway between the towers.

[2]Mr. Herbert Rold, who was a tenant on the Duncan property, stated that it was not his practice to obtain permission from adjacent owners before carrying out aerial operations which might involve flying at low altitudes over adjacent property. He also testified that he felt that he had a perfect right to have his pilot turn an airplane over a neighbor's land because such was the common practice throughout the Sacramento Valley. The court then ruled that according to the evidence, the flights were permissive and that appellants had not established a prescriptive right.

Duncan land, not a prescriptive easement. Then the court again ruled appellants' proffered evidence relating to the installation of power lines on the Duncan land inadmissible.

Appellants' initial contention for reversal, as set forth in the written briefs filed prior to oral argument, was twofold. They argued that their evidence established a prescriptive ''avigation'' easement in the air space over the Duncan land as a matter of law, and that if it did not establish such an easement as a matter of law, it at least raised a question of fact which should have been resolved by the jury instead of the court. However, at oral argument appellants discarded their claim to a prescriptive ''avigation'' easement in favor of an ''irrevocable license''; they argued for the first time that the evidence proved, as a matter of law, that they owned an ''irrevocable license'' to fly over the Duncan land in order to seed, fertilize and spray their own land by air. We shall dispose of appellants' arguments, as set forth in their briefs, before directing our attention to this present contention.

Significantly, the question as to whether a person may acquire an ''avigation'' easement over the land of another by long, open, continuous and adverse use of the air space has not been decided in this state.[3] Moreover, arguably this question was not properly before the court below since appellants did not, at any time prior to trial, assert ownership to an ''avigation'' easement, nor was the existence of such an easement placed in issue by the pretrial conference order. However, we do not find it necessary to decide these questions for we conclude that, in any event, the trial court's unfavorable ruling to appellants' initial position was supported by substantial evidence (*Berniker* v. *Berniker*, 30 Cal.2d 439 [182 P.2d 557]). First, according to the evidence, it was the custom of agricultural pilots, when spraying rice lands in the Sacramento Valley, to fly their airplanes at low altitudes over adjoining lands, and the court could reasonably find that appellants' neighbor simply acquiesced to this custom. Second, the Duncan land was also used to grow rice, and appellants did not prove that their flights interfered with the landowner's use of that property. It is the rule that

---

[3] In this state ''[t]he ownership of space above the land . . . is vested in the several owners of the surface beneath . . .'' (Pub. Util. Code, §21402.) Moreover, avigation easements are recognized by statute (Code Civ. Proc., §§ 1239.2, 1239.3 and 1239.4). Thus, it is arguable that an avigation easement can be acquired by prescription if all of the essential elements of adverse use are present.

" [a] temporary invasion of airspace by aircraft over the land of another is privileged so long as it does not unreasonably interfere with persons or property on the land." (*Sneed* v. *County of Riverside,* 218 Cal.App.2d 205, 210 [32 Cal.Rptr. 318]).

■ Appellants' secondary contention that the trial judge erred when he did not submit the prescriptive "avigation" easement issue to the jury is not supported by the authorities. While article I, section 14, of the California Constitution guarantees a jury trial in condemnation cases on the issue of the defendant's damages, this is the only issue to be decided by the jury; all other issues of law or fact must be decided by the court (*People* v. *Russell,* 48 Cal.2d 189 [309 P.2d 10] ; *People* v. *Ricciardi,* 23 Cal.2d 390 [144 P.2d 799] ; *Vallejo etc. R.R. Co.* v. *Reed Orchard Co.,* 169 Cal. 545 [147 P. 238] ; Code Civ. Proc., § 592).

■ Turning next to appellants' present contention, they argue in essence that the evidence proves, as a matter of law, that they built an airstrip and made other valuable improvements on their land in order to conduct spraying, fertilizing and seeding operations from the air in reliance on the implied license that their airplanes could fly at low altitudes over the Duncan land. Appellants cite the rule that a person who expends money or makes valuable improvements in reliance on a parole license to use the land of another acquires an irrevocable license (*Stoner* v. *Zucker,* 148 Cal. 516 [83 P. 808, 113 Am.St.Rep. 301, 7 Ann.Cas. 704] ; *Stepp* v. *Williams,* 52 Cal. App. 237 [198 P. 661] ; 31 Cal.Jur.2d, Licenses, § 75, p. 222).

At the outset we make it clear that we do not believe that appellants' evidence impels the conclusion that they acquired an irrevocable license to fly over the Duncan land. However, be this as it may, we also conclude that appellants are foreclosed from making this assertion for the first time on appeal. At the trial level appellants merely asserted ownership of a prescriptive "avigation" easement and then geared their offer of proof to the establishment of such an easement. In fact, in order to presently assert an "irrevocable license," appellants must resort to evidence which was offered for entirely unrelated purposes.[4] Thus, even if we should assume that this evidence is sufficient to establish the existence of an "irrevocable license," respondent was not given the oppor-

---

[4] The evidence relating to the airstrip and other improvements which appellants allegedly made on their land was offered on an entirely unrelated issue.

tunity to refute the evidence. ▮ It is the rule that a party may not present a new theory for the first time on appeal that ". . . contemplates a factual situation the consequences of which are open to controversy and were not put in issue or presented at trial . . ." (*Panopulos* v. *Maderis*, 47 Cal.2d 337, 341 [303 P.2d 738].) ▮ In short, in changing their theory on appeal, appellants have attempted to lift themselves up by the bootstraps by pointing to bits and pieces of evidence which were offered on other issues. Consequently, in order to allow appellants to successfully do so, we would have to hold that a litigant who claimed ownership of a prescriptive "avigation" easement for the first time during a condemnation trial, can, by resorting to evidence which was understandably not refuted by his opponent, secure a reversal of the judgment and trial de novo on an entirely new and different theory. Manifestly, such a result does violence to our idea of fair play and would set a precedent which could prolong litigation in some cases almost indefinitely.

The cases cited by appellants for the proposition that they may change their theory on appeal are clearly distinguishable. They are mainly cases in which the factual situation was not only undisputed, but could not have been changed by the presentation of additional evidence. However, in the instant case not only are we called upon to weigh and resolve conflicts in the evidence, but conceivably the factual situation could have been changed if respondent had been apprised of appellants' contention and had presented evidence to refute it.

The judgment is affirmed.

Conley, P. J., concurred.

A petition for a rehearing was denied April 1, 1969. Stone, J., did not participate therein. Appellants' petition for a hearing by the Supreme Court was denied April 30, 1969. Tobriner, J., did not participate therein.