[Civ. No. 9611. Fourth Dist., Div. Two. July 21, 1970.]

CITY OF NEWPORT BEACH, Plaintiff and Respondent, v.
FREDERICK HUGH SASSE, Defendant and Appellant.

**COUNSEL**

Kirtland & Packard, Austin C. Smith, Jr., and Harold J. Hunter, Jr., for Defendant and Appellant.

Tully H. Seymour, City Attorney, and Thomas L. Woodruff, Assistant City Attorney, for Plaintiff and Respondent.

**OPINION**

**TAMURA, Acting P. J.**—This is an action on an insurance policy issued by Underwriters of Lloyds (defendant, sometimes referred to as Underwriters) to recover attorneys' fees and costs expended by plaintiff (City) in defense of an action for false arrest and false imprisonment brought against the City and certain of its police officers. Defendant appeals from a judgment for the City.

The following is a background of the present action:

The City and the police officers were sued on a complaint alleging two causes of action, the first for false arrest and false imprisonment and the second for unreasonable delay in taking the plaintiff (Gill) before a magistrate.[1] The City and the officers were insured by defendant against liability for false arrest, false imprisonment and malicious prosecution. A primary certificate provided coverage up to $10,000 (with a $250 deductible) for any one arrest and an excess certificate provided coverage up to $40,000 for any one arrest. The primary certificate contained the following pertinent provisions:

"2. Underwriters also agree to reimburse the assured for the amount of any expenses (which expression shall include all investigations, adjustment and legal expenses) incurred by the assured in the investigation, adjustment and defense of any claims, suits or proceedings which may be brought against the assured.

". . . . . . . . . . . .

"5. In the event of a claim occurring likely to involve the Underwriters hereunder, the assured shall not make any payment, assume any liability or incur any expense without the consent of the Underwriters being first obtained. Underwriters shall be entitled, if they so desire, to take over the conduct in the name of the assured of the defense of any claim, or to prosecute in his name for their own benefit any claim for indemnity or damages

---

[1] Prior to trial, the action was dismissed as to the City.

or otherwise against any third party, and shall have full discretion in the handling of any claim, and the assured shall give all information and assistance as the Underwriters may reasonably require."

At the Underwriter's request, plaintiff's city attorney defended the action. Trial resulted in a verdict and judgment in favor of Mr. Gill. On motion of defendants the court ordered a new trial on the issue of damages only. Mr. Gill appealed and the matter ultimately reached the state Supreme Court which affirmed the order granting a new trial. (*Gill* v. *Epstein,* 62 Cal.2d 611 [44 Cal.Rptr. 45, 401 P.2d 397].) At the retrial, the Underwriter's retained counsel undertook the defense. Retrial resulted in a judgment for Mr. Gill for a lesser amount than was previously awarded. The City paid $350 directly to Mr. Gill ($250 deductible under the policy on the first cause of action, plus $100 awarded Mr. Gill on his second cause of action).

The City and the Underwriter were unable to agree upon the amount of legal expenses and costs incurred by the City in defending the *Gill* action and the present action ensued. The evidence may be summarized as follows:

Walter Charamza, now a municipal court judge, was plaintiff's city attorney at the time the *Gill* action was instituted. He handled the defense of the suit from its inception and until the Supreme Court granted a hearing. Judge Charamza testified that he initially submitted a bill to defendant for legal expenses based upon the reasonable value of his services but, upon defendant's insistence that it was only obligated to reimburse for actual expenditures, he recomputed the bill on the basis of actual cost to the City for the time he spent on the case.[2] He determined the hourly cost to the City for his services in the following manner: He deducted from the city attorney's budget the salary of the assistant city attorney who did not work on the case and divided the adjusted budget by the number of working hours in a fiscal year based upon an 8-hour day and a 5-day week. He then made a conservative estimate of the time spent on the *Gill* case which he determined to be 326 hours. On the foregoing basis he testified he submitted an oral demand for a "total figure [of] . . .$8,021.92."

Judge Charamza left the city attorney's office in September 1964 to accept his judicial appointment. His successor, Mr. Seymour, testified that after he took office as city attorney he devoted 37 hours to the *Gill* case.

Defendant introduced into evidence two letters from Mr. Seymour to counsel for defendant offering to settle the City's claim; one letter was dated

[2]Early in the instant trial the court ruled that under the terms of the policy, reimbursement must be based on actual cost rather than reasonable value of legal services.

June 22, 1965, and the other July 26, 1966. In his June 22 letter Mr. Seymour stated in part: "In addition, I am sending you a cost statement setting forth the City's actual disbursements in defending the case. With regard to the question of attorney's fees, I have recomputed the fees on the following basis: To arrive at an hourly rate I took the total operating budget of the City Attorney's office for each of the four fiscal years we have worked on the case. From the yearly budget totals I subtracted the Assistant City Attorney's salary. I then took 50% of the net yearly budget and divided that figure by the number of working hours in a year (minus holidays and vacation). . . ." The letter gave the figures used in the computations and stated that based thereon, the attorneys' fees would be $2,753.13 and out-of-pocket expenses plus attorneys' fees would total $5,895.83. The letter concluded with the statement: "I hope that these new figures will give you a basis for settlement of the City's claim."

The letter of July 26 stated that the City had incurred additional costs of $309.47 and had paid $100 to Mr. Gill in satisfaction of the judgment on the second cause of action, bringing the City's total claim to $6,305.30. The letter concluded with the following paragraph:

"I should also point out that the basis on which we calculated the hourly rate for time expended on the case and the resulting figure for attorney's fees was very conservative (see my letter of June 22, 1965). These figures were arrived at in an effort to reach a compromise. In the event that it is necessary to litigate this matter, we will certainly revise our calculations."

The court accepted Judge Charamza's testimony as being the best evidence of the actual cost to the City of the legal services provided by the city attorney, found that the City was entitled to reimbursement of $8,021.92 attorney's fees and $3,428.29 costs, and entered judgment in favor of the City for $11,450.21.

Defendant attacks the judgment on the following grounds: (1) The City had a statutory duty to defend the action against the police officer at City expense and, hence, defendant was not obligated to reimburse the City; (2) cost and expenses should be shared equally by the parties because the policy covered only the first cause of action and not the cause of action for unreasonable delay in taking Mr. Gill before a magistrate; (3) Mr. Seymour's letters contained admissions concerning the actual costs and expenses incurred by the City and the trial court should have found in accordance with those admissions; (4) inasmuch as defendant's liability under the primary certificate was limited to $10,000, the total costs and expenditures to which the City was entitled could not exceed an amount, which when added to the amount of the judgment in the *Gill* case, would exceed $10,000; (5) the trial court misconstrued the evidence by erroneously as-

suming that Judge Charamza's "total figure of $8,021.92" represented attorney's fees only when, in actuality, it included "out-of-pocket" expenses.

## I

■ Defendant asserts that by virtue of the City's statutory obligation under former section 2001 of the Government Code to provide legal defense for the police officers at City expense, defendant is not required to reimburse the City. Defendant may not thus avoid its contractual obligation.

· Former section 2001 of the Government Code (Stats. 1961, ch. 1962, § 2, p. 3669, effective September 15, 1961[3]), in effect at the time the *Gill* action was filed, provided in relevant part: *"Unless provision has been made by the public entity for the employment of other counsel in connection therewith,* the attorney for the public entity, upon request of the employee, shall act as counsel in the defense of any action or proceeding brought against an employee of the public entity, in his official or individual capacity, or both. . .

"· · · · · · · · · · · · ·

"The attorney's fees, costs and expenses of defending the action or proceeding pursuant to this section are a lawful charge against the public entity." (Italics added.)

Former section 1956 of the Government Code (Stats. 1961, ch. 444, § 1, p. 1517, effective September 15, 1961), also in effect at the time of the *Gill* action, provided in relevant part: ". . . a . . . city . . . *may insure its officers,* deputies, assistants, agents, and employees against any liability . . . *for injuries or damages resulting from false arrest or false imprisonment,* either by self-insurance or *in any insurer authorized to transact such insurance in the State* . . . ." (Italics added.)

Under the policy issued by defendant, it reserved the right to decide whether it would provide defense of an action or permit the insured to do so. In the latter event it contracted to reimburse the insured for costs and legal expenses incurred. Section 2001 and section 1956 expressly authorized it. Defendant's contention is without substance.

## II

Defendant's contention that the costs and expenses should be shared equally by the parties because liability under the second cause of action was not covered by the policy is devoid of merit.

---

[3]Appellant erroneously cites Stats. 1951, ch. 1087, § 1, p. 2822, which, however, contains substantially the same language.

█ The tort of false imprisonment is the nonconsensual, intentional confinement of a person, without lawful privilege, for an appreciable length of time, however short. (1 Harper & James, Torts (1956) p. 226; Rest. 2d Torts, § 35.) █ False imprisonment "is the unlawful violation of the personal liberty of another." (Pen. Code, § 236.) The Penal Code definition governs in civil as well as criminal actions. (*Collins* v. *County of Los Angeles,* 241 Cal.App.2d 451, 459 [50 Cal.Rptr. 586]; *Muller* v. *Reagh,* 215 Cal.App.2d 831, 836 [30 Cal.Rptr. 633]; *Stallings* v. *Foster,* 119 Cal. App.2d 614, 619 [259 P.2d 1006]; *Parrott* v. *Bank of America,* 97 Cal. App.2d 14, 22 [217 P.2d 89, 35 A.L.R.2d 263]; *Dillon* v. *Haskell,* 78 Cal.App.2d 814, 816 [178 P.2d 462].) █ In California a cause of action for false imprisonment will lie (1) where there has been an unlawful arrest followed by imprisonment, or (2) where the arrest is lawful but an unreasonable delay has occurred in taking the person before a magistrate, for so much of the imprisonment as occurred after the period of the reasonable or necessary delay. (*Dragna* v. *White,* 45 Cal.2d 469, 471-474 [289 P.2d 428]; *Kaufman* v. *Brown,* 93 Cal.App.2d 508, 511 [209 P.2d 156].) █ The second cause of action in the *Gill* suit was clearly one for false imprisonment within the meaning of the policy.

### III

Defendant urges that Mr. Seymour's letters of June 22, 1965, and July 26, 1966, contained admissions as to the correct amount due the City and that the court should have found in accordance with those admissions.

Although the letters appeared to be offers of compromise or settlement, the judge nevertheless overruled plaintiff's objections to their admissibility and stated he would consider them "for whatever . . . [they are] worth."[4]

█ Assuming that certain statements in the letters constituted admissions respecting the proper method of computing the actual cost of the city attorney's legal services, the weight to be given such admissions was for the trial judge. The judge did weigh the evidence and, as was his prerogative as the trier of fact, determined that "the best evidence we have as to the amount of attorney's fees was furnished by Judge Charamza, who certainly knew more about it than his successor, who was handling it only

---

[4]Although the propriety of the court's ruling is not in issue, it was of doubtful validity. Defendant argues that the court's ruling was proper under *People* v. *Forster,* 58 Cal.2d 257 [23 Cal.Rptr. 582, 373 P.2d 630], which held that even though an offer of compromise itself is not admissible, an admission made in the offer or in the course of negotiation is admissible. The *Forster* rule was abolished by section 1152, subdivision (a) of the Evidence Code. (*County of San Joaquin* v. *Galletti,* 252 Cal.App.2d 840, 842-843 [61 Cal.Rptr. 62]; see Witkin, Evidence (2d ed. 1966) pp. 337-338.)

for a short period of time." He made findings accordingly. It is axiomatic that as a reviewing court we are not at liberty to disturb a finding supported by substantial evidence.

Defendant contends that there is no substantial evidence to support the finding because Judge Charamza's approach failed to make allowances for items of cost in the operation of the city attorney's office unrelated to the defense of the *Gill* case. Suffice it to say that defendant offered no evidence to show that the method used by Judge Charamza was improper. Although in his letter of June 22, Mr. Seymour stated he took 50 percent of the adjusted city attorney's budget as a base in calculating the hourly cost of the city attorney's services, he was not asked to explain why he did so. Judge Charamza's approach resulted in a charge of $15.50 per hour for his services, a sum well within reason.

 Defendant contends that the City failed to prove any expenditures other than the normal operating costs of the city attorney's office and that, therefore, it was not entitled to reimbursement. The contention is specious. *Pennsylvania R. Co.* v. *Chicago, M., St. P. & P. R. Co.* (7th Cir. 1968) 389 F.2d 67, cited by defendant is inapposite. There an indemnity clause of a railroad trackage agreement obligated the indemnitor to hold indemnitee harmless "from . . . all judgments and costs" rendered against the indemnitee. The court, quite properly, construed the word "costs" as used in the agreement to mean taxable costs normally included in a judgment and not attorney's fees. In the instant case the policy of insurance expressly provided for reimbursement of all expenses, including "legal expenses."

## IV

In a supplemental brief defendant contends that the only policy of insurance introduced into evidence was the primary certificate with a policy limit of $10,000 and that, therefore, recoverable costs and expenses are limited to an amount which, when added to the amount of the *Gill* judgment, would result in a total liability within the $10,000 limit.[5]

That contention was never raised in the court below either by pleading or during trial. Although defendant filed objections to the findings and conclusions, and accompanied it by an extensive memorandum, it never urged that the award exceeded the limits of coverage. In fact in its memo-

---

[5]There is nothing in the record now before us showing the amount of the *Gill* judgment. The trial court made no finding as to the amount. The record does disclose that the judge agreed to take judicial notice of the record in the *Gill* action in considering the time and effort devoted by Judge Charamza to the case. Defendant asserts that the record in that case shows that on the retrial the judgment was for $5,000 on the first cause of action and $100 on the second cause of action. The City does not challenge the correctness of those figures.

randum, defendant urged the court to accept the figure given in Mr. Seymour's letters and to reduce the award to $6,205.30. That sum, when added to the amount of the *Gill* judgment, would have resulted in a total liability exceeding $10,000. ██ A party may not present a new theory for the first time on appeal that ". . . . contemplates a factual situation the consequences of which are open to controversy and were not put in issue or presented at the trial. . . ." (*Panopulos* v. *Maderis,* 47 Cal.2d 337, 341 [303 P.2d 738]; *Pacific Gas & Elec. Co.* v. *Peterson,* 270 Cal.App.2d 434, 439 [75 Cal.Rptr. 673]; *Pacific Tel. & Tel. Co.* v. *Chick,* 202 Cal. App.2d 708, 718 [21 Cal.Rptr. 326].) An exception has been recognized where the theory presented for the first time on appeal involves only a legal question determinable from facts which are not only uncontroverted in the record but could not be altered by the presentation of additional evidence. (*Marsango* v. *Automobile Club of So. Cal.,* 1 Cal.App.3d 688, 694 [82 Cal.Rptr. 92]; see *Pacific Gas & Elec. Co.* v. *Peterson, supra,* p. 439.) ██ In the present case although the primary certificate indicates that the limitation of liability was $10,000 "inclusive of expenses" for one arrest, the existence of excess coverage was established by the pleadings, stipulation of the parties, and the findings.[6] It is entirely possible that under the terms of the excess coverage defendant was obligated to reimburse the City for all costs and expenses notwithstanding the fact it would cause defendant's total liability to exceed $10,000. Resolution of the defense now sought to be raised involves legal and factual questions which are open to controversy and were not presented at trial. In these circumstances defendant may not raise it for the first time on appeal.

## V

Finally defendant contends that the court misinterpreted Judge Charamza's testimony in assuming that the "total figure" ($8,021.92) to which he testified represents only attorney's fees. Plaintiff concedes the correctness of defendant's contention in this respect; it admits that Judge Charamza's "total figure" included costs.

The record reflects the following: At the outset of the trial it was stipulated that total costs incurred by the City was $3,428.29. It is apparent from Judge Charamza's testimony that his "total figure" included costs incurred to September 1964. Since the total time devoted by Judge Charamza to the *Gill* case was 326 hours, the hourly charge for his services was $15.50. In

---

[6]The parties stipulated that defendant Sasse, one of the Underwriters, "be deemed to represent all of the Certain Underwriters at Lloyds, London, subscribing to Certificate of Insurance Nos. JLO 8923 [primary coverage] and JLO 11728 [excess coverage]. . . ."

addition, the uncontradicted evidence shows that after he succeeded Judge Charamza, Mr. Seymour devoted 37 hours to the *Gill* case.

Based upon the foregoing evidence plaintiff requests this court to adopt the following accounting and to modify the judgment accordingly:

| | | |
|---|---:|---:|
| Costs incurred 7/1/61 to 7/1/64 . . . . . . . | $2,968.97 | |
| Costs incurred 7/1/64 to 7/1/65 . . . . . . . | 459.32 | |
| Total Costs . . . . . . | | $3,428.29 |
| Attorney Fees—W. Charamza 326 hours at $15.50 per hour (1961-1964) . . . . . . . . . . . . . . . . . | $5,052.95 | |
| Attorney Fees—T. H. Seymour 37 hours at $15.50 per hour (1964-1965) . . . . . . . . . . . . . . . . . | 573.50 | |
| Total Attorney Fees | | 5,626.45 |
| Payment on judgment by City of Newport Beach to Ed Gill . . . . . . . . . . . . . . | | 100.00 |
| Total costs and fees | | $9,154.74 |

■ Section 956a of the Code of Civil Procedure empowers a reviewing court to make findings contrary to, or in addition to those made by the trial court in nonjury cases or in cases where a jury has been waived. The purpose of the section is to enable appellate courts, in the interest of expeditious administration of justice, to terminate litigation by affirmance, or modification and affirmance, where the record discloses that remand for further proceedings would serve no useful purpose. (*Kerr Land & Timber Co.* v. *Emmerson,* 268 Cal.App.2d 628, 635-636 [74 Cal.Rptr. 307]; *Newhart* v. *Pierce,* 254 Cal.App.2d 783, 795 [62 Cal.Rptr. 553]: *St. Paul Fire & Marine Ins. Co.* v. *Hartford Acc. & Indem. Co.,* 244 Cal.App.2d 826, 833-834 [53 Cal.Rptr. 650].) ■ Where an item has been erroneously included or excluded from an account and its correctness is simply a matter of computation, a reviewing court may make the corrections so that all issues are finally resolved on appeal. (*Proctor* v. *Smith,* 214 Cal. 227, 231 [4 P.2d 773]; *Rosenthal* v. *Rosenthal,* 240 Cal.App.2d 927, 931-932 [50 Cal.Rptr. 385].) The present case is an appropriate one for the exercise of the factfinding power granted to a reviewing court by section 956a.

We adopt the accounting set forth above. It is ordered that the findings and judgment be modified accordingly, and as so modified, the judgment is affirmed.

Kerrigan, J., concurred.

A petition for a rehearing was denied August 6, 1970, and appellant's petition for a hearing by the Supreme Court was denied September 24, 1970,