J-S32035-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CHRISTOPHER GARY BAYLOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AYANO ETO BAYLOR | : | No. 529 EDA 2019 |
| | : | |
| Appellee | : | |

Appeal from the Order Entered January 16, 2019
In the Court of Common Pleas of Delaware County Civil Division at
No(s):  2018-002610

BEFORE:  SHOGAN, J., NICHOLS, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                     **FILED JULY 22, 2019**

Christopher Gary Baylor (Husband) appeals, *pro se*, from the order denying his complaint for an annulment.  Following a careful review of the record and case law relevant to this appeal, we quash.

Our review of the certified record reveals that Husband and Ayano Eto Baylor (Wife) met on the internet in 2013.  On November 18, 2013, Wife, a citizen of Japan, arrived in the United States after obtaining a K1 fiancé visa.  Husband and Wife were married on February 10, 2014 in Dakota County, Minnesota.  The parties briefly resided in Minnesota as Husband and Wife before moving to Palm Coast, Florida, where Husband obtained employment.  In August 2015, the parties welcomed a child together – the only child born of the relationship.  The parties resided in Florida until October 2016, after

which they moved to Knoxville, Tennessee, and then back to Lonsdale, Minnesota in September 2017.

The record further reflects that on October 4, 2017, Wife filed in Minnesota a petition for order for protection (OFP) on behalf of herself and the parties' child, effectively ending the parties' relationship. On November 16, 2017, an evidentiary hearing was held on the petition; the trial court found that Wife testified credibly as to her allegations of domestic abuse and granted the OFP. Wife filed a motion to modify OFP on December 5, 2018, requesting that the court limit communication between the parties. The next day, Husband filed a petition for OFP against Wife and a motion to modify child and spousal support. Husband filed a motion to modify his petition for OFP on January 2, 2018. The trial court held a hearing on Husband and Wife's petitions on January 11, 2018, after which it granted Wife's motion and denied Husband's petitions. Husband appealed the trial court's decision to grant Wife an OFP to the Minnesota Court of Appeals, which affirmed the trial court's OFP on May 14, 2018. The Minnesota Supreme Court denied Husband's petition for allowance of appeal.

On April 6, 2018, Husband filed a complaint for an annulment in Delaware County, Pennsylvania. Husband filed a petition for the appointment of a special master on April 13, 2018, and a corrected motion for the appointment of a master on May 14, 2018. On May 24, 2018, the trial court appointed R. Scott Aldridge (Master) as special master "for the purpose of

adjudicating [Husband's] entitlement to an annulment." Master's Report and Recommendation, 9/17/18, at 1 (unpaginated).

On September 12, 2018, the Master convened a hearing. Wife appeared by telephone from Minnesota and Husband appeared in person. Wife testified that she continues to reside in Minnesota; Husband testified that he resides in Yeadon, Pennsylvania, "although he claims dual residency with a location in the State of Florida." *Id.* at 2 (unpaginated). After hearing testimony from both parties, the Master concluded that Husband "has not proven by a preponderance of the evidence either that he was induced to enter into the marriage due to fraud, duress, coercion, or force, or that there was no subsequent voluntary habitation after knowledge of the existence of any such grounds." *Id.* at 6 (unpaginated).

On October 12, 2018, Husband filed a motion for reconsideration of the Master's findings and recommendations. The trial court denied the motion for reconsideration on October 29, 2018. Husband appealed to this Court. In a *per curiam* order issued on January 11, 2019, this Court *sua sponte* quashed Husband's appeal, opining that "[a]n appeal does not lie from an order denying reconsideration; instead, an appeal must be timely filed from the underlying order." Order, 1/11/19.

On January 16, 2019, the trial court issued its order denying Husband's complaint for an annulment and adopting the Master's Report and Recommendation. Husband filed a timely appeal to this Court. On February 19, 2019, the trial court issued an order requiring Husband to file a statement

of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b); Husband filed his Rule 1925(b) statement on March 5, 2019.

Husband presents seven issues on appeal:

1. Whether the [l]ower court abused its discretion and erred in an annulment case, because of a lack of experience and misapplication of law in a dissolution action not commonly practiced[?]

2. Whether the [l]ower court's lack of understanding in regards to immigration law, was thought to alleviate their judicial responsibility of making a fair and impartial decision based on the merits of the case, versus its reliance on personal opinion[?]

3. Whether the [l]ower court derived its computation of a statute of limitation based on common law, whereby denying Appellant due process because of misapplication of the law in regards to when an aggrieved party may or must file an action of annulment[?]

4. Whether the [l]ower court misinterpreted Appellant's impediment of "legal" coercion, as "voluntary cohabitation", dismissing material facts since he is a male, thus denying, ignoring and mischaracterizing non-female victims as "complainers", or "retaliators", since the concept of male abuse is incomprehensible to the closed mind[?]

5. Whether the [l]ower court deprived Appellant of a *de novo* trial before the court as a matter of law and right to procedural due process guaranteed under the constitution of the United States[?]

6. Whether a child born in wedlock constitutes as a "committed" or "intimate" relationship when Appellee committed physical, verbal, and mental abuse intertwined with deception and fraud, legal and criminal coercion, the infliction of false imprisonment and infidelity[?]

7. Whether simply appointing an attorney was a "good idea" to hear complex matters of a case, when the claim was a fault

- 4 -

dissolution, compared to a no-fault action, whereby causing Appellant, a self-litigant, to be treated unfairly because of favoritism, bias and prejudice[?]

Husband's Brief at 11-12.[1]

Before reaching Husband's issues, we address the deficiencies of his brief, noting:

[A]ppellate briefs and reproduced records must materially conform to the requirements of the Pennsylvania Rules of Appellate Procedure. Pa.R.A.P. 2101. This Court may quash or dismiss an appeal if the appellant fails to conform to the requirements set forth in the Pennsylvania Rules of Appellate Procedure. *Id.*; *Commonwealth v. Lyons*, 833 A.2d 245 (Pa. Super. 2003). Although this Court is willing to liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon the appellant. *Id.* at 252. To the contrary, any person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing. *Commonwealth v. Rivera*, [ ] 685 A.2d 1011 ([Pa. Super.] 1996).

*Commonwealth v. Adams*, 882 A.2d 496, 497-98 (Pa. Super. 2005).

Instantly, Husband is acting *pro se*. Husband's brief falls well below the standard delineated in the Rules of Appellate Procedure. *See* Pa.R.A.P. 2119(a). In his brief, Husband includes indiscernible legal arguments supported by inapplicable law. For instance, in his fifth issue, Husband

---

[1] Husband's Rule 1925(b) statement of errors contains issues that Husband failed to raise in his statement of questions involved or in the body of his brief. *See* Rule 1925(b) Statement, 3/5/19. Because Husband has abandoned these issues on appeal, we may not address them. *See* Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby"); *see also* Pa.R.A.P. 2119; *Gurley v. Janssen Pharmaceuticals, Inc.*, 113 A.3d 283, 288 n.11 (Pa. Super. 2015) (issue is waived for purposes of appellate review when an appellant does not develop it in brief).

appears to argue that he did not voluntarily cohabitate with Wife throughout the duration of the marriage. Rather, Husband claims that he was a victim of false imprisonment, citing a decision from the California Court of Appeals in support of his assertion. *See* Husband's Brief at 42 (citing *City of Newport Beach v. Sasse*, 88 Cal.Rptr. 476 (Cal. Ct. App. 1970)).

Husband also advances arguments with quotations of legal principles, yet fails to ascribe a source to them, as illustrated by an excerpt from his fourth issue: "Coercion, is an impediment that exists if one of the parties is pressured by any circumstances to enter into marriage. (In order for the impediment to cease, the situation must change so that the party can marry freely of his or her own will.)" Husband's Brief at 38. While vaguely citing to the definition of coercion, Husband does not credit any source, relevant or otherwise, with the proposition he advances regarding grounds for annulment.

Husband's remaining arguments are similarly defective. Even if we liberally construe Husband's brief, the nearly unintelligible legal argument impedes our ability to conduct meaningful review. On this basis alone, we could suppress Appellant's brief and dismiss the appeal. *Adams*, 882 A.2d at 498; Pa.R.A.P. 2101.

However, we proceed to consider *sua sponte* whether we have jurisdiction over this appeal. Jurisdiction is the capacity to pronounce a judgment of the law on an issue brought before the court through due process of law. It is the right to adjudicate concerning the subject-matter in a given case . . . . Without such jurisdiction, there is no authority to give judgment

- 6 -

and one so entered is without force or effect. *Rieser v. Glukowsky*, 646 A.2d 1221, 1223 (Pa. Super. 1994) (quoting *Mintz v. Mintz*, 83 Pa. Super. 85, 88 (1924)). The trial court has jurisdiction if it is competent to hear and determine controversies of the general nature of the matter involved *sub judice*. *Id.* at 1224. "Jurisdiction lies if the court had power to enter upon the inquiry, not whether it might ultimately decide that it could not give relief in a particular case." *Id.* It is well-settled that the question of subject matter jurisdiction may be raised at any time, by any party, or by the court *sua sponte*. *K.B. II v. C.B.F.*, 833 A.2d 767, 774 (Pa. Super. 2003) (citations omitted).

Pennsylvania has subject matter jurisdiction in cases of divorce when "at least one of the parties has been a *bona fide* resident in this Commonwealth for at least six months immediately previous to the commencement of the action." 23 Pa.C.S.A. § 3104(b). We have held:

> "*Bona fide* residence" means domicile; i.e., actual residence coupled with the intention to remain there permanently or indefinitely. Mere absence from a domicile, however long continued, cannot effect a change of domicile, there must be an animus to change the prior domicile for another. Furthermore, there is a presumption that the original domicile continues and a person asserting a change of domicile must demonstrate such change by clear and convincing proof.

*Zinn v. Zinn*, 475 A.2d 132, 133 (Pa. Super. 1984).

The terms domicile and residence are not interchangeable; whereas residence is a physical fact, domicile is a matter of intention. *Greenwood*, 515 A.2d at 965. "Thus, 'it seems that a person's domicile is increasingly

being determined by close scrutiny of his subjective intentions or state of mind as to whether or not he considers a particular place to be his home.'" *Scoggins v. Scoggins*, 555 A.2d 1314, 1323 (Pa. Super. 1989). "Therefore, '[i]ntent, being purely subjective, must to a large extent be determined by the acts which are manifestations of the intent.'" *Id.*

Wife claims that neither she nor Husband were *bona fide* residents of Pennsylvania at the time Husband filed the complaint for annulment or for the six months immediately prior. **See** Wife's Brief at 13; **see also** Wife's Answer and Counterclaim, 8/18/18, at 2 (unpaginated). Wife avers that Husband's filing for an annulment in Pennsylvania, "will only serve to delay the courts in Minnesota from performing their duties and completing the divorce action." Wife's Brief at 15.

The record reveals that Husband was born in the United States and Wife was born in Japan. The parties met over the internet and, after a period of time, Husband invited Wife to the United States. On November 18, 2013, Wife arrived in the United States after obtaining a K1 Visa. Under the terms of the K1 Visa, Wife was to marry Husband within 90 days of her arrival (by February 16, 2014), after which the parties could begin the process of Wife obtaining permanent residency status and remain in the U.S. indefinitely; otherwise, Wife would only be permitted to remain in the United States legally until the expiration of her K1 Visa. On February 10, 2014, Husband and Wife were married in Minnesota.

From the date of marriage until March 2014, the parties resided in Minnesota. Thereafter, they moved to Florida, and then briefly relocated to Knoxville, Tennessee in May 2016, before returning to Minnesota. The parties separated in October 2017.

In their respective pleadings, memoranda of law and arguments, the parties continue to shed light on their intent with respect to domicile. While Husband acknowledges that Wife has continued to reside in Minnesota, in his complaint for annulment, Husband asserted that he has "dual residency" in Pennsylvania and Florida. **See** Complaint to Establish Annulment of Marriage, 4/6/18, at ¶ 1. Likewise, the Master noted in his report and recommendation that Husband "claims dual residency with a location in the State of Florida."[2]

In Wife's answer and counterclaim to Husband's complaint for annulment, Wife questions Husband's domiciliary intent in Pennsylvania. Specifically, Wife alleges the following with regard to domicile and Pennsylvania's subject-matter jurisdiction:

### AFFIRMATIVE DEFENSES

- The parties were not married in Pennsylvania, and neither party is a Pennsylvania resident.

---

[2] "It must be recognized that some confusion has arisen, and still persists, in the lay mind as to what constitutes domicile, for it is often used synonymously with residence." **Bell v. Bell**, 473 A.2d 1069, 1074 (Pa. Super. 1984). Although Husband purports to assume "dual residency," thus permitting him to bring actions in multiple jurisdictions, our Supreme Court has rejected forum shopping. "In point of law . . . only one of these places can be his permanent legal residence, that is, his domicile." **In re Lesker**, 105 A.2d 376, 379 (Pa. 1954).

- 9 -

- Pennsylvania is not the home state of the child.

- There is another case concerning these parties in another state.

    o Other: Hennepin county, State of Minnesota[,] Court File No. 27-DA-FA-17-6539 (Order for Protection).

    o Other: Hennepin county, State of Minnesota[,] Court File No. 27-FA-18-3158 (Marriage of Dissolution).

**COUNTERCLAIM FOR ANNULMENT OR IN THE ALTERNATIVE FOR DIVORCE**

1. Jurisdiction

- The parties were married on February 10, 2014 in Dakota County, Minnesota.

- [Wife] has been a resident of the State of Minnesota for at least six mo[n]ths prior to filing this Counterclaim and intends to make Minnesota [ ] her home for an indefinite period of time[.]

- [Husband's] physical address in the past 6 months prior to filing was not in Pennsylvania.

Wife's Answer and Counterclaim, 8/18/18, at 2 (unpaginated).

Wife further asserts:

[t]he courts in Minnesota have accepted the validity of this marriage and are in the midst of deciding a divorce action. [Husband] has filed several motions in an attempt to dismiss that divorce action, including a motion for improper venue which was denied with Minnesota specifically asserting venue. Most recently, [Husband] filed a motion to dismiss for lack of personal jurisdiction, which has been dismissed.

Wife's Brief at 13. Wife avers that "[t]he district court in Minnesota has ordered that venue remain in Minnesota in response to each of [Husband's]

- 10 -

motions." Wife's Brief at 10 (citing State of Minnesota County of Hennepin Family Court Division Case Number 27-FA-18-3185).

While Husband argues that Pennsylvania has jurisdiction because he filed his complaint "first," *i.e.*, before Wife filed her divorce action in Minnesota, Husband further complicates the issue of subject-matter jurisdiction by having filed duplicative pleadings in multiple jurisdictions. In fact, the trial court noted:

> There also exists a pending divorce action brought by [Husband] in the state of Florida, as well as a custody matter and a personal injury action brought by [Husband] against [Wife] in Florida. (Divorce and Custody matter was filed by [Husband] in Brevard County Florida on August 29, 2018 at case no.: 05-2018 DR 043314[;] the docket indicates still pending).[FN] 3
>
> > FN 3 *See also*, Brevard County Fl dockets: 05-2019-DR-012274, and 05-2019-CA-013081.

Trial Court Opinion, 3/25/19, at 2.

Finally, Husband appears to have established ties to numerous jurisdictions throughout the parties' legal proceedings. In addition to Husband's contacts with Minnesota and Florida, our scrutiny of the record reveals:

- Husband mailed the complaint for an annulment to Wife in Minnesota from New York. *See* Affidavit of Service, 4/13/18;

- Husband had adult toys mailed to him at an address in Allison, Iowa as recently as July 26, 2017 (8.5 months prior to the filing of Husband's

complaint for an annulment).[3]  **See** Plaintiff's Record of Testimony, 5/14/18, at Ex. A;

- The second amended OFP order was served on Husband on January 11, 2018, at an address in Houston, Texas.  **See** Wife's Answer and Counterclaim, 8/18/18, at Ex. 1 (stating, "The Guardian also recommended [Husband] participate in Domestic Violence programming that **is recommended by the county government of Houston, Texas, where his residence is located.**") (emphasis in original).

After careful review, we are not persuaded that Husband is domiciled in Pennsylvania based on his scattershot presence in Pennsylvania and ties to other states, including but not limited to Minnesota and Florida.  Accordingly, the Court of Common Pleas of Delaware County lacked subject matter jurisdiction over Husband's complaint for an annulment pursuant to 23 Pa.C.S.A. § 3104.

---

[3]  Relevant to the annulment action, Husband provided receipts of adult toys purchased during the course of the parties' marriage to support his claim that even though the parties cohabitated, they "rarely shared a bed or had sex. We were essentially a sexless couple, and while embarrassing, I sometimes had to purchase adult toys, simply to maintain my sexual sanity. . . ." Husband's Record of Testimony, 5/14/18, at 2.

Appeal quashed.[4, 5]

Judgment Entered.

*Joseph D. Seletyn* (signature)

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/22/19

---

[4] We further recognize that the trial court found the claims raised in Husband's Rule 1925(b) statement of matters complained of on appeal to be waived. Specifically, the trial court stated:

> It is well established law that to preserve issues for appeal relating to a Master's Report a party must file exceptions or file a written demand for a hearing *de novo*. Pa.R.A.P. 302(a)[;] **see also**[ ] 23 Pa.C.S.[A.] § 3321. Moreover, Pa.R.C.P. 1920.55-3 required [Husband] to appeal the Master's Findings by filing a written demand for a hearing *de novo*. No such demand was filed, thus precluding appellate review. **Metzger v. Metzger**, 534 A.2d 1057, 1058 (Pa. Super. 1987).

Trial Court Opinion, 3/25/19, at 7. This Court has stated time and again that "issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Instantly, Husband was required to file exceptions challenging the master's conclusion prior to filing a notice of appeal. His failure to do so results in waiver of his claims on appeal.

[5] We likewise deny Husband's May 28, 2019, motion to amend his reply brief due to a "scrivener's error."